JESSE B. SUTTON v. CHARLES S. BECKWITH.

*Promissory note — Consideration — Contemporaneous agreement —
Good-faith purchaser—Bohemian-oat contract—Evidence—
Estoppel.*

1. In a suit by the purchaser of a promissory note before maturity, but with knowledge that its *real* consideration was the agreement of a so-called Bohemian oat association to sell $800 worth of oats for the maker before calling for payment of the note, testimony that the maker, after giving the note, took the initiatory steps towards joining another association of the same kind, can have no possible bearing upon the issue, and should be rejected.

2. In answer to the contention that the admission of such testimony was error without prejudice, as, there having been no breach of the agreement at the time of the purchase of the note, it could not be robbed of its negotiability, and the plaintiff was entitled to recover, the only defense being the non-performance of the agreement, the Court, while reversing the judgment for the erroneous admission of said testimony, *held*, further, as follows :

   *a*—An agreement made at the time of the execution and delivery of a promissory note, to be performed *before* its maturity, and forming its *real* consideration, is a part of the transaction, and, as between the parties, its performance is a condition precedent to the enforcement of the note; and a purchaser of the note before maturity, and before a breach of the agreement, but who has seen it, and is acquainted with its relation to the note, is bound the same as if the agreement was attached to the note or written upon the same piece of paper.

   *b*—A maker who says to a proposed purchaser of his note that it is all right, and that he will pay it at maturity, is estopped, after its purchase in reliance upon such statement, from asserting a failure of consideration, or pleading any other invalidity against the note.

Error to Branch. (Pealer, J.) Argued January 5, 1888. Decided January 26, 1888.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Barlow & Loveridge,* for appellant.

*Milo D. Campbell,* for plaintiff.

MORSE, J.   On the first day of March, 1885, the defendant executed and delivered to one George Cole, of Dundee, Michigan, the following promissory note:

"400.                                    March 1, 1885.
   " One year after date I promise to pay to  W. H. Elson  or bearer four hundred dollars, value received, with 7 per cent. interest per annum.
                           " CHARLES S. BECKWITH."

At the time this note was given, 40 bushels of Bohemian oats, at a called price of $10 per bushel, were then and there delivered by said Cole to the defendant.   Cole gave back, at the same time, the following agreement to the defendant:

              " ALGANSEE TOWNSHIP, BRANCH COUNTY, ⎱
                        STATE OF MICHIGAN.          ⎰
   " We do hereby agree to sell 80 bushels of Bohemian oats for Charles Beckwith, at $10 per bushel, on or before the twenty-fifth day of January, 1886.   The note given by Charles S. Beckwith to W. H. Elson will not be called for until the above amount is sold at $10 per bushel.
                           "JO. R. STRAYER."

The plaintiff brought suit upon this note in the circuit court for Branch county.   The defendant pleaded the general issue, with a notice that the note was given upon the express consideration as set forth in said agreement or bond; that the note was in fact given to the Michigan Bohemian Oat Association, and that the bond entered into and was a part of the transaction of the giving of the note, and, in fact, the principal part of the consideration of the note; that it was distinctly agreed that said note should not be called for until said association had sold 80 bushels of Bohemian oats, at $10 per bushel, for the defendant; that neither said association nor said Jo. R. Strayer, nor any person, sold the said 80 bushels of oats for the defendant, and that, in

fact, the consideration of said note to that extent has failed.

That the plaintiff had full and perfect knowledge of all the matters above set forth before he purchased said note, and had notice of the want of consideration therefor, and purchased such note, if he purchased it at all, with full knowledge thereof; also that defendant would show an entire failure of consideration for said note, of which the plaintiff had notice.

The plaintiff had judgment for the full amount of the note, and interest. The evidence established the fact that, before the purchase of the note by the plaintiff, he sent his cashier or agent to see the defendant, who informed the said agent of the circumstances of the giving of the note, and showed him the bond.

The plaintiff gave evidence tending to show that afterwards, and before he bought the note, the defendant came into his place of business, and said to him:

"The note is all right. I gave the note, and I suppose I am good for it, and I shall pay it when it is due."

This was denied by the defendant.

The terms of the bond were never performed, but at the time the plaintiff purchased the note there had been no breach of the bond or agreement, as the time of its performance was yet several months away. At the time of the commencement of this suit the defendant held the bond against Strayer.

The principal error assigned is upon the admission of certain testimony having a tendency to show that, after the execution of this note, the defendant took initiatory steps towards joining and becoming a member of a Bohemian oat association other than the one purporting to give the bond or agreement in this case.

This testimony was objected to as being incompetent, irrelevant, and immaterial. We think the testimony should have been rejected. It could have no possible bearing upon the issue involved. It may have, and probably did, work in

68 MICH —20.

the minds of the jury a prejudice against the defendant.

The counsel for plaintiff argues that, admitting that the admission of this evidence was erroneous, yet it could have done the defendant no harm, because the plaintiff, upon the undisputed facts, was entitled to a verdict in any event; that the rejection of this evidence, or striking it out of the case, would not have changed the result, as the plaintiff without it was entitled, as a matter of law, to a verdict in his favor.

The counsel insists that, there being no breach of the bond or agreement at the time he became the owner of the note, and purchasing it before due, the instrument could not be robbed of its negotiability, and the plaintiff was entitled to recover, the only defense being upon the bond, and that it had not been fulfilled. He cites a large number of authorities to sustain his position. Many of the cases so cited are not applicable to the state of facts existing in this case. The principal cases tending to support his claim are *Adams v. Smith*, 35 Me. 324; *Kelso v. Frye*, 4 Bibb, 493; *Dow v. Tuttle*, 4 Mass. 414; and *Bank v. Cason*, 39 La. Ann. 865 (2 South. Rep. 881).

In *Adams v. Smith*, the note in suit was made to the Protection Insurance Company of New Jersey or order. Upon the face of the note were the words "No.     Brig Cushnoc." The note was given for a policy of insurance upon the brig Cushnoc, and the policy received for the same contained this stipulation:

"In case of loss, such loss to be paid in thirty days after proof of the loss and of interest in the assured, the amount of the note given for the premium being first deducted."

The defendant offered to prove that the brig was his property; that the note was given for insurance upon her; that she was lost within the life-time of the policy, and before the pay-day of the note; that he had taken the necessary and prerequisite steps to prove and perfect his claim; that his

claim under the policy exceeded the amount of the note; and that the stipulation in the policy was known to the plaintiffs at the time of its indorsement to them.

The court hold that the defense was not admissible;—

"That the note was the property of the insurance company, unpaid and negotiable, and having been transferred to the plaintiffs in the ordinary course of business, by indorsement before its maturity, they are entitled to recover the amount due upon it."

No reason other than this is given for the decision.

In *Kelso v. Frye* the note was given for a clock, and a writing, under the hand of the company selling the clock, was executed at the same time as the note, and delivered to the purchaser, warranting the clock, and containing a promise that, if the clock should not prove good, the company would either make it good or replace it by a good one. The evidence of this writing was rejected, upon the ground that the performance of this agreement or stipulation could not be construed as a condition precedent to the payment of the note, and that a breach of it must form the basis of a separate action; that the sale of the clock, and not the performance of the stipulation, was the consideration of the note. Whether or not the assignee or holder of the note had notice of this stipulation does not appear in the report of the case.

The case of *Dow v. Tuttle* is the nearest to the present case of any cited upon plaintiff's brief. There the defendant offered to show that, at the time of the making of the note, it was agreed between the promisor and promisee, and was the condition on which the note was given, that payment should not be demanded until the expiration of five years, and that the promisee would not sell or part with the note. The defendant also offered to read to the jury the following paper, signed by the promisee:

" These lines may certify that I, the subscriber, agree with

James Tuttle to wait on him for the money due me till he turns his property to the best advantage."

This paper was dated February 15, 1804, and the note February 16, same year. Defendant offered to prove that this writing was made and signed at the same time with the note, and constituted part of the same contract; that the plaintiff was present, and had full knowledge of all the agreements aforesaid. The evidence was rejected. The agreement offered, outside of the written paper which I have quoted, seems to have rested in parol.

The supreme court of Massachusetts, in passing upon the case, do not refer at all to the paper writing, but say that—

"The agreement   *   *   *   is not to be considered as a part of the contract with the note. That [the note] is a promise to pay to the promisee or his order, a sum of money in one year. If the agreement was a part of this contract, it would be repugnant to the note and destroy its effect. The agreement, although made at the same time, must be considered as a collateral promise of the promisee, for a breach of which, if there be a legal consideration, an action would lie. In chancery, it would be a sufficient ground for an injunction against the plaintiff, proving his knowledge of it before he purchased the note. And at law, perhaps, it may support a motion to stay proceedings, by granting imparlances, until the plaintiff could put it in suit consistent with the agreement. *   *   *   As we consider the agreement as collateral to the note, the evidence was properly rejected."

The editor of the report, in a note to the case, says:

"From the evidence it seems that the two paper writings should, between the original parties, and between the maker and an assignee with notice, have been treated as parts of one entire transaction."

This note agrees, as will be seen hereafter, with the decisions of our Court, and seems to me to be sound doctrine.

In *Bank v. Cason* the consideration of the note was admitted to be lawful and valuable. At the time the plaintiff became the holder of the note there had been no failure of the consideration.

The defense to the note was that it was given as collateral security for plantation supplies, to be furnished the defendant for the year by the payees of the note; that shortly after its execution, and when only a small part of the supplies had been furnished, the payees failed; that other parties succeeded the payees in the same business, and that ultimately, by the shipment of cotton, the defendant's account for supplies, which the note was given to cover, was fully paid; and that the consideration of the note was known to the bank at the time it became the holder of the note. The note was transferred to the bank before maturity, and for value. The question presented was whether such knowledge on the part of the bank deprived it of the right to recover on the note. When the bank acquired the note the consideration had not failed, and the contract between defendant and the payees was being executed, and part of the supplies had been advanced. The court say:

"If the consideration be lawful, the knowledge of that consideration can of itself have no bearing on the rights of the transferee. * * * It cannot affect the negotiability of a note that its consideration is to be hereafter realized, or that from some contingency it *may* never be enjoyed."

There are other authorities tending in the same direction, and to the same effect, of these four cases above noted.

But none of the cases that I have examined seem to meet the circumstances of this case. It is evident that the consideration of the note in suit was not the 40 bushels of oats, at $10 per bushel, but the agreement or bond executed and delivered at the same time as the note. The transaction, as a whole, appealed to the cupidity of the maker. He was to receive $800 for 80 bushels of oats before he was to pay $400 for the 40 bushels delivered to him. This agreement was what he acted and relied upon, and formed the consideration of his note. He would never have given it for the 40 bushels of oats independent of the promise in the bond. The oats he

received cut but little figure in the dealing in the mind of the defendant.

Nor was this agreement or bond a collateral undertaking. It was executed at the same time as the note, and a part of the same transaction.

These two papers, so executed, must be taken and construed together. They formed one contract, and, between the original parties to the note, could not be enforced until the agreement was performed. It has been well settled, in this State and elsewhere, that several instruments made at one and the same time, and having relation to the same subject-matter, must be taken to be parts of one transaction, and construed together for the purpose of showing the true contract between the parties. *Singer Mfg. Co. v. Haynes,* 36 Mich. 385; *Smith v. Van Blarcom,* 45 Id. 371 (8 N. W. Rep. 90); *Dudgeon v. Haggart,* 17 Id. 273; *Eberts v. Selover,* 44 Id. 519 (7 N. W. Rep. 225); *Chapman v. Colby,* 47 Id. 46, 51 (10 N. W. Rep. 74); *Bronson v. Green,* Walk. Ch. 56; *Makepeace v. College,* 10 Pick. 298, 302; *Jackson v. McKenney,* 3 Wend. 233.

The negotiation of the note by the payee to the plaintiff was a fraud upon the maker, and nothing but the negotiable quality of the note, as it appeared standing alone, could deprive the defendant of his defense, of his right to show the whole contract of which it was only a part. *Smith v. Van Blarcom,* 45 Mich. 373.

If the plaintiff had been a good-faith holder of the note, with no knowledge of the bond, he would have been entitled to recover, because of the negotiable form of the note.

But if he purchased the note before due, and before the time of performance stated in the bond, with the agreement attached to it and forming a part of the contract, he would be obliged, under the law, to take the note as qualified and controlled by the bond or agreement. And if he saw the bond before he purchased the note, and was acquainted with

its relation to the note, he must be considered as bound by it, the same as if it had been attached to the note, or written upon the same piece of paper. The bond not having been performed, the consideration failed, and the plaintiff could not recover, unless the jury believed his claim that the defendant came to him, or saw him, and told him the note was all right, and he would pay it when it became due. If the defendant said this, or its equivalent, to the plaintiff, he would be estopped, after the plaintiff had bought the note relying upon this statement, from afterwards asserting a failure of consideration, or pleading any other invalidity against the note.

For the erroneous admission of testimony heretofore noted, the judgment of the court below must be reversed, with costs, and a new trial granted.

CHAMPLIN and, LONG, JJ., concurred.

SHERWOOD, C. J. I agree with my Brother MORSE that the judgment in this case should be reversed. And were the case one in which the rules governing the law merchant might be invoked, I should agree in most that he has said in the case.

The contract under consideration was a gross fraud from the beginning to the end, and, on the part of the parties procuring it, was even worse,—it was criminal in character,—and furnishes no case for the application of the just and equitable principles underlying and controlling commercial law, and to attempt to apply them to a case like this is a perversion of the doctrine; and an appeal to the adjudicated cases establishing this doctrine is only giving colorable dignity to one of the worst swindles perpetrated upon the present generation, and should be treated by all courts as such.

The transaction is one wherein the intention to cheat and defraud is apparent to all upon the face of the contract

sought to be enforced, except to the ignorant and unsuspecting, and, in my judgment, is against public policy and void. If there were any doubt upon this subject, the recent legislation in this State making the transaction a felony should be regarded as conclusive.

Certain it is that no person owning and holding or having knowledge of the entire contract can be considered as a *bona fide* holder of the paper, and it is questionable whether a holder of any part of the contract should be so regarded.

The judgment should be reversed, and no new trial should be granted.

CAMPBELL, J., did not sit.