GERRIT S. WARD v. JOHN W. DOANE AND JEHU E.
PARKINSON.

*Promissory note—Good-faith purchaser—Liability of indorser of
void note—Evidence—Charge to jury.*

1. It is a fact of which courts may take knowledge that notes known as "Bohemian Oat Notes" are all obtained and given upon a similar scheme or arrangement, and are void, as against public policy, between the maker and payee, or any other person having knowledge or information of the scheme upon which they are based, and by which they are procured.[1]

2. Where the testimony in a suit by an alleged *bona fide* holder of a "Bohemian Oat Note" tended to show that the plaintiff had knowledge of the true character of the paper, *before* its purchase, he may be cross-examined touching his knowledge, before or at the time of such purchase, of Bohemian oat notes in general, or as to his information or knowledge specially in regard to any such note which had come into his hands or to his attention.

3. Where, in a suit upon a Bohemian oat note purchased by a firm composed of five members, only two of the partners were shown to have taken any part in such purchase, or to have known anything about it until after it was made, the presumption is that the remaining members were ignorant of the consideration of the note.

4. A Bohemian oat note is void as to all parties acquainted with its character (*McNamara v. Gargett*, 68 Mich. 454), and no new liability can be created upon it; not even a contract of indorsement between the payee and one acquainted with its fraudulent character.

5. Where the purchaser of a Bohemian oat note testified that he had read of this Bohemian oat note scheme, and knew that some farmers were getting into it, in the absence of a denial on his part that said scheme was a fraudulent one, the jury and court have the right to presume that it was the same old fraud with which the whole State is now familiar, and in such

---

[1] See *Sutton v. Beckwith*, 68 Mich. 303, *Mace v. Kennedy*, Id. 389, *McNamara v. Gargett*, Id. 454, *Davis v. Seely*, 71 Id. 209, for "Bohemian oat note cases."

a case the jury should be instructed that if they found that the plaintiff knew that the note was given for Bohemian oats, or was so informed before its purchase, he could not recover.

Error to Gratiot. (Hart, J.) Argued October 17, 1889. Decided November 1, 1889. .

*Assumpsit.* Defendant Doane brings error. Reversed. The facts are stated in the opinion.

*C. J. Willett,* for appellant, contended:

1. The indorsement of Parkinson constitutes a new and independent contract, supported by a full consideration, and is not affected by prior equities; citing 2 Pars. N. & B. 25; *Church v. Edson,* 39 Mich. 113.

2. The jury should have been instructed that knowledge or notice that the note was given for Bohemian oats was enough to make the purchaser guilty of that bad faith which will prevent him from claiming the protection of innocence; citing *Converse v. Blumrich,* 14 Mich. 120; *Peabody v. McAvoy,* 23 Id. 530; *Burroughs v. Ploof,* 73 Id. 607; *Moore v. Township of Kenockee,* 75 Id. 332.

*James L. Clark,* for plaintiff, contended:

1. The rule, that after the illegality of a note has been shown the burden of proof shifts to the plaintiff to show that he is a *bona fide* holder for value, only extends to such persons as have some knowledge of or participation in the transaction, or the negotiation of the paper, and in this case cannot extend to the members of the firm who are shown to have had no such knowledge or participation; citing *Shaw v. Clark,* 49 Mich. 384.

2. An indorsee, having knowledge or notice of the fraud connected with a negotiable paper, or being privy to it, cannot recover on his contract of indorsement; citing *Turner v. Keller,* 66 N. Y. 66; *Ackland v. Pearce,* 2 Camp. 599.

MORSE, J. This controversy grows out of an attempt to collect a Bohemian oat note now owned by the firm of W. S. Turck & Co., said firm consisting of Gerrit S. Ward, William S. Turck, Ammi W. Wright, Charles E. Webster, and Joseph H. Seaver. The plaintiff is the

collecting agent of the firm, and sues as such; the note being indorsed over to him for collection.

The note bears date of September 25, 1885, payable 15 months after date to J. E. Parkinson or bearer, and is for the sum of $500, with interest at 7 per cent. after January 1, 1886. The note was executed at Forest Hill, Gratiot county, by the defendant Doane, and delivered by him to the payee, the defendant Parkinson, who indorsed it in blank, and transferred it to W. S. Turck & Co., before due, on January 21, 1886, for $450. The usual bond was given to Doane at the time of the making of the note, and the illegality of the note between the original parties thereto was recognized on the trial, under the former rulings of this Court. The only issue was the good faith of the plaintiff's firm in its purchase. Ward testified that he was the cashier of the firm, and the one who purchased the note, and was not informed by any one, previous to its purchase, as to the consideration of it, and had no knowledge of what it was given for; that when it was first presented to him he refused to buy it, and referred Parkinson to Turck. Parkinson went in, and had some conversation with Turck; that after Parkinson went away, Turck told Ward, if Parkinson brought the note in, to give him $450 for it. Turck testifies that Parkinson came into the back office, to see him. No one else was present. Parkinson wanted to sell the note. Turck said the note ought to be good, with Parkinson's indorsement. Parkinson said:

"It is on long time, and Ward will not take it."

Turck said:

"We don't want to handle any long-time notes in the bank. It is not business for bankers to handle long-time notes."

Parkinson replied that it would be quite an accommo-

dation to him; and Turck finally told him that he would take it, but he could give only $450 for it. None of the rest of the firm had anything to say or do about the buying of this note. A few days thereafter, Turck went south, and did not return until the middle of April, 1886. He did not learn that Ward had taken the note until he came back. He testifies he did not know what the note was given for until after his return. He further testified, on cross-examination, that he knew before this note was purchased something about Bohemian oat notes; had read about the scheme, and knew that some farmers were getting into it.

Parkinson testified, for the defense, that his recollection was that he told Turck, in his conversation with him in the bank, what the note was given for, and showed it to him, and that, before or at the time he presented the note to Ward, Ward told him that he had advised the firm not to buy any Bohemian oat notes. Does not remember whether or not he told Ward what the note was given for. On cross-examination, he said that his recollection was poor, he had had trouble with his head; that he could not be positive that he had this conversation, in which he told Turck that the note was given for Bohemian oats, before or after he negotiated the note to Ward; and further said:

" It always looked to me as though it was before, but I wouldn't make it certain.

" Q. You wouldn't be positive?

" A. No, sir; but I lean to the opinion that it was before."

Turck and Ward both deny the testimony of Parkinson, that he said anything to them, or they to him, about this being a note for Bohemian oats, or anything in relation to Bohemian oat notes before the purchase of the note in suit.

There. was testimony of other persons—farmers who had given notes for this kind of oats—to the effect that Ward had told them after the purchase of these notes, and while he was urging the payment of them, that he advised his folks not to have anything to do with Bohemian oat notes, and one Mr. Ring testified that, while talking with him about a note of Ring's, which W. S. Turck & Co. held, he asked Ward if, when he bought these notes (referring to all the Bohemian oat notes the firm held), he did not know all about them, and Ward replied that he did.   These conversations were denied by Ward, who testified that he told Ring that if he had known there would have been any trouble connected with these notes he would not have bought them.

The jury found a verdict for the plaintiff for the full face of the note and interest.

Four errors are claimed to have been made by the circuit judge in the trial of this case:

*First.* It is contended that the defendants were not permitted to go as fully as they desired into the question of the witness Turck's general information or knowledge of Bohemian oat transactions, and of the consideration of other Bohemian oat notes discounted by him.

We think the defendants were entitled, on cross-examination, to ask the witness any proper question touching his knowledge, before or at the time of the purchase of the note in suit, of Bohemian oat notes in general, or as to his information or knowledge specially in regard to any Bohemian oat note which had come into his hands or to his attention.   It is a fact of which courts may take knowledge that notes known as Bohemian oat notes are all obtained and given upon a scheme or arrangement similar one to the other, and void, as against public policy, between the maker and payee, or any other person having knowledge or information of the scheme

upon which they are based, and by which they are procured. · There was testimony in the case tending to show that Turck knew this note was a Bohemian oat note before his firm purchased it. If this testimony were true, his knowledge of Bohemian oat notes in general and in particular was material.

We are not prepared to say from the record that the defendants were denied the privilege of a full investigation of the witness' knowledge in this respect. In connection with his testimony that he knew some farmers were getting into this Bohemian oat note scheme, he was asked the following question:

"Do you swear that you didn't know that these notes, and the consideration of them, was Bohemian oat business?"

It was ruled out, the court saying:

"I don't see the materiality of any other notes than the one in question."

If it was desired by this question to show that Turck knew that the consideration of other notes that he had purchased, or that had been presented to him before he bought the note in suit, was for Bohemian oats, the defendant was entitled to the testimony; but if the notes were so presented or purchased afterwards, it was immaterial. What he knew or learned about Bohemian oat notes after he bought this note was of no consequence.

The *second* error assigned is that the court erred in not instructing the jury that the burden rested on the plaintiff to show that no member of the firm of W. S. Turck & Co. had knowledge of the consideration of this note before or at the time it was purchased by said firm. Turck and Ward being shown to be the only members of the firm taking any part in the purchase of this note, and the only ones shown to have known anything about

its purchase until after it was bought, the presumption would obtain, we think, in the absence of any proof to the contrary, that they (the remaining members) were ignorant of its consideration.

*Third.* The court instructed the jury that Parkinson could not be held upon the note in this suit, unless Doane was also found liable.

It is claimed that this was of injury to Doane, as the jury might think it unjust that Parkinson, who received $450 for this note, should avoid liability, and therefore be influenced to hold Doane, so that Parkinson might not escape. It is also contended that Parkinson's indorsement was a new and independent contract, not subject to the equities of Doane.

As a general rule, an indorser, knowing that a note is not genuine, or that it is invalid, when he disposes of it, by reason of such indorsement, is held liable upon his indorsement for the full face value of the note, and to have guaranteed its validity thereby; and this rule is a just and equitable one. But in the present case we think the court was right. This note was defended by Doane on the ground that it was a Bohemian oat note, and consequently void as against public policy, between Doane and Parkinson, the maker and payee, and that it was also void in the hands of plaintiff, because the firm of W. S. Turck & Co. had knowledge before purchase of the fraudulent and illegal consideration of the note. Being void in its inception, and a contract not enforceable by any of the immediate parties to it, no other person, having knowledge of its invalidity, can enforce it. And, if the firm of W. S. Turck & Co. knew that it was a Bohemian oat note when they purchased it, and bought it of the payee, Parkinson, then public policy also requires that any contract between them and Parkinson, the object and purpose of which was to give life

to this illegal paper, shall be also void, upon the same grounds as those which destroyed its validity at its inception. This note is void as to all parties acquainted with its character (*McNamara v. Gargett*, 68 Mich. 454 (36 N. W. Rep. 218), and no new liability can be created upon it; not even a contract of indorsement between the payee and one acquainted with its fraudulent character. For instance, if all of the $450 had not been paid to Parkinson at the time he delivered this note to Ward, he could not have recovered from W. S. Turck & Co. the balance of the price agreed to be paid for the note, as the transfer of the note would have furnished no consideration for the agreement. Nor can W. S. Turck & Co., if they had knowledge of the illegal character of this note, recover back from Parkinson, in any form of action, or upon any theory of the law, the $450 they have paid him. Both parties, W. S. Turck & Co. and Parkinson, in such case are engaged in a transaction against public policy, and therefore void; and the law will leave each of them where they have placed themselves, without redress. The benefits and burdens growing out of the illegal business cannot be disturbed or equalized. The law will have nothing to do with the transaction in any way, except to declare it void.

The *fourth* assignment of error relates to the charge of the circuit judge as to the effect the knowledge on the part of W. S. Turck & Co. that this note was given for Bohemian oats would have upon the plaintiff's right to recover. The court stated in the general instructions, in speaking of notice to the purchaser:

"The knowledge or notice the purchaser should have must be of such facts as will bring to their notice and knowledge that it was an illegal and fraudulent transaction. Perhaps, before these transactions became so notorious and generally understood,—that a note given for

the purchase of Bohemian oats was connected with an illegal transaction,—the same knowledge would not carry with it notice of its illegality, at least, would not be as likely to carry such notice as after their character became so notorious that every one may be presumed to know something of the contracts that accompanied the giving of the notes. It is not the fact that Bohemian oats enter into the transaction alone that makes the note illegal, for these oats may be subject to sale, the same as any other grain; but it is the character of the contract that is made in connection with the sale of these oats, namely, the fictitious price and giving a contract or bargain back to sell to others double the amount of grain at such fictitious price, that constitutes the illegality."

This was all that was said in relation to this subject before the jury retired to deliberate upon their verdict. The court had properly instructed the jury that, if they believed the testimony of the defendant Doane, the note was fraudulent and void, as between him and Parkinson; and that, if plaintiff's firm had notice or knowledge before purchase of its illegality, he could not recover; and that the burden of proof was upon plaintiff to show that they did not have such knowledge or notice. But, in regard to such firm's knowledge that the note was given for Bohemian oats, the above excerpt contains all of the court's remarks thereon.

After the jury had been out for some time they returned into court, and the foreman said:

" We don't agree in regard to the bank knowing whether that was a Bohemian oat note or not."

The court then read over that part of his charge bearing on this question. The following colloquy between the court and jury then took place:

"Foreman. Didn't you say in your charge that if this jury find that the plaintiffs—this banking firm—knew that that note was a Bohemian oat note when they

bought it, the note would be void? Was there not something like that in your charge,—and they could not recover?"

"*The Court*. Not in that language. I don't think you could have understood what I just read.

"*Foreman*. I understood that part very well.

"*The Court*. If you find that the bank knew at the time the note was given the facts which constituted,—at the time they purchased the note; if they knew the facts that made the note illegal; knew the terms of the contract that constituted the illegal part; that made the note illegal,—the bank couldn't recover.

"*Foreman*. I understood you in your charge to say, if the jury find that the plaintiffs knew of that being a Bohemian oat note, they couldn't recover.

"*The Court*. You perhaps misunderstood me. The simple fact of knowledge that a note was given for Bohemian oats would not carry with it notice of its illegality.''

We think the court erred in the statement to the jury, under the testimony—especially that of Turck—in this case, that the simple fact of knowledge that a note was given for Bohemian oats would not be notice of its illegality. As an abstract question of law, perhaps, or as applied to some cases, this instruction might be correct; but as applied to the case at bar, it was wrong. W. S. Turck testified that he had read of this Bohemian oat note scheme and knew that some farmers were getting into it. In the absence of any denial on his part that the scheme which he had read and heard of was a fraudulent one, the jury had the right to presume, as did also the court, that the scheme he was acquainted with was the same old fraud with which the whole State is now familiar. The jury should have been plainly told, in view of Turck's testimony, that if they found that Ward or Turck knew this note was given for Bohemian oats, or were so informed before the purchase of it, the plaintiff could not recover, and the verdict must be for the defendants.

By reason of the errors above noticed the judgment of the court below must be set aside and a new trial granted, with costs of this Court to defendants.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred with MORSE, J.

SHERWOOD, C. J. I agree with my brethren in this case, that notes procured as this was are void on the ground of public policy. The transaction out of which it grew, and which constitutes its only consideration, is now made a crime by statute. The defense urged goes to the very essence of the paper, and renders it void, and should be held to prevent any one from acquiring a legal title thereto, or any right to enforce it. The manner of obtaining it should be held a species of duress, involving a degree of turpitude scarcely less dangerous in business transactions than that of forgery; and paper obtained as this was should be subjected to the same rules in commercial dealings. In no other way can a community be protected against the effect of such an outrageous swindle. For the reasons I have stated, I concur in the reversal.