DANIEL HELMS v. CHARLES S. DOUGLASS, IMPLEADED WITH G. W. CLARK.

*Bills and notes—Good-faith holder—Evidence—Bohemian oat note.*

Plaintiff purchased a "Bohemian oat note" before maturity, and at a reasonable discount. He testified that at the time of the purchase he had heard that the payee was dealing in Bohemian oats, but had never bought any himself; that he knew nothing of the scheme or plan of their sale, nor what the note was given for. There was no evidence that such scheme or plan of sale had become public at time of such purchase. And it is held that plaintiff was entitled to recover if the jury believed his testimony.

Error to Gratiot. (Hart, J.) Argued June 6, 1890. Decided June 13, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*C. J. Willett,* for appellant.

*H. & E. L. Walbridge,* for plaintiff.

[The claims of counsel, and authorities relied on, are stated and cited in the opinion.—REPORTER.]

MORSE, J. This is an action in *assumpsit* on a Bohemian oat note. Helms, who claimed to be a good-faith purchaser for value before due, sued the maker, Douglass, and G. W. Clark, the payee and indorser. Douglass appeared and defended.

The record shows that Helms purchased the note before due, at a reasonable discount, of the defendant Clark. Plaintiff testified that he had no knowledge when he bought the note of its consideration. Defendant Clark testified that he did not inform plaintiff that the note

was given for Bohemian oats. The note was given to Clark by Douglass, October 14, 1885, the consideration being Bohemian oats. The transaction was the usual one, with which the courts and people generally are now well acquainted. It need not, therefore, be set forth. The first oats sold by Clark in Gratiot county, where Helms and Douglass reside, was in September, 1885. This was about the first of any sales of these oats in that part of the State.

The plaintiff testified that, at the time he bought the note, he had heard Clark was dealing in Bohemian oats, but that he had not heard anything in regard to the contract that was made between the parties buying the oats and the seller; that he never bought any of the oats himself, and knew nothing of the scheme or plan of their sale; that he did not know, at the time he purchased the note, what it was given for, but knew Clark quite intimately. Knew his circumstances, and that he had a pretty good big farm. His wife testified that she was present when the note was purchased, and that nothing was said about Bohemian oats, or what the note was given for.

Defendant Douglass testified that plaintiff told him before the bringing of suit that he knew the note was a Bohemian oat note when he bought it, and understood what the scheme was, and considered it a fraud; but when a man paid a good consideration for a note he could collect it. This conversation was denied by plaintiff, who also testified that he did not know it was given for Bohemian oats when he purchased it.

The face of the note was $200, and plaintiff paid $188 for it. He bought it a few weeks after it was given. The plaintiff had verdict and judgment for the face of the note, and interest.

The counsel for defendant contends that, in line with

the decisions of this Court, he was entitled to a verdict directed by the court. We do not think so. On the plaintiff's showing, he was entitled to recover. He knew nothing of the plan or scheme under which Bohemian oats were being sold, and there was no evidence that such a scheme had at that time become public. Clark testifies that it was not talked of at all at that time, and there is no testimony to the contrary. Helms did not know, if his testimony be true, that the note was given for Bohemian oats. The only fact in his knowledge bearing upon the subject is that he knew Clark was dealing in Bohemian oats.

The court instructed the jury that if Helms knew that the note was given for Bohemian oats, and was a fraud, at the time he purchased it, or if he had such notice of it *as would put an ordinarily prudent man on inquiry* as to its illegality, and he neglected to make such inquiry, it would show bad faith, and he could not recover. The latter part of his direction was more favorable than the defendant was entitled to under the law. He also properly instructed the jury that if they believed the testimony of plaintiff he was entitled to recover.

This case differs materially from *Ward v. Doane*, 77 Mich. 328. In that case, one of the members of the firm which plaintiff represented testified that he knew before the note was purchased "something about Bohemian oat notes; had read about the scheme, and knew some farmers were getting into it." There was also testimony tending to show that this same witness knew that the note was a Bohemian oat note before his firm purchased it. Here the plaintiff was ignorant of the scheme, and did not know that the note was given for Bohemian oats, if his testimony is to be believed.

The judgment is affirmed, with costs.

The other Justices concurred.