## Caroline A. Shattuck v. Peter C. Hart.

*Bills and notes—Consideration—Contemporaneous agreement—Defenses—Appeal.*

Where, on a trial of a suit upon a promissory note, the defense is confined to a denial of the execution of the note and of a consideration therefor, the defendant cannot interpose, under an assignment that the court erred in refusing a general request to direct a verdict in his favor, the defense that the plaintiff failed to comply with an accompanying agreement that payment should not be compelled during the lifetime of the maker, unless he failed on demand to secure such payment.

Error to Macomb.    (Canfield, J.)    Submitted on briefs October 10, 1893.    Decided February 6, 1894.

*Assumpsit.*    Defendant brings error.    Affirmed.    The facts are stated in the opinions.

*Bowen, Douglas & Whiting,* for appellant.

*Eldredge & Spier,* for plaintiff.

Grant, J.    This suit is based upon two promissory notes,—one for $1,000, dated September 11, 1883; the other, November 7, 1887, for $2,000,—each payable one year from date.    Defendant pleaded the general issue, with notice that the notes were barred by the statute of limitations, and an affidavit denying that he executed them.

Plaintiff is a daughter of the defendant. Simultaneously with the execution of the first note, plaintiff wrote, and defendant signed, the following statement:

"I think it best to make some explanation concerning the note of one thousand dollars ($1,000), given September 11, 1883, by me to Mrs. Caroline A. Shattuck. It is in part for timber taken from the 40 acres of land in township of Lenox, of which Caroline A. Shattuck has the deed, and the balance for failure on my part to plant an orchard of 100 fruit trees (according to agreement), and to keep up the fences, and to build a barn on the 40 acres of land, and feed out, on the land, the hay and straw that was raised thereoff, which I wished to do, and was prevented from doing by some one of my own family. I requested Caroline A. Shattuck to write this explanation. Also, she is not to compel me to pay the note during my lifetime unless I see fit to do so (unless I fail to secure her against losing it). This I sign of my own free will, because I consider it my duty to do so. There need be no question as to the validity of the note."

A statement similar in character accompanied the second note, and reads as follows:

"I, Peter C. Hart, have this day given a note of $2,000 to Mrs. Caroline A. Shattuck, to be secured her against the loss of that amount of money that I have been over-persuaded and compelled, against my wishes, by Charles B. Hart and George L. Hart, to assist them in defrauding her of that amount of money, she having hired it to them, and I promised her that I would secure her from losing the money. The said Mrs. Caroline A. Shattuck is not to present the note for collection during my lifetime, if I continue to pay her sufficient on the note to keep it valid, unless she has good reasons to think there is danger of loss by not presenting it for collection; or, if the said Charles B. Hart and George L. Hart shall pay to Mrs. Caroline A. Shattuck the amount of money they honestly owe her, then she is not to present this note for collection. This explanation is written at my request, and I sign it of my own free will."

These statements were delivered to the plaintiff with the notes. She testified that these transactions were not to be

mentioned to outside parties during her father's lifetime.

Verdict and judgment were for the plaintiff on the first note. The jury expressly found that there was a valid consideration for the $1,000 note, and that there was no valid consideration for the $2,000 note. The land in regard to which the promise was made had been deeded by the defendant to the plaintiff as a gift, he reserving to himself a life-estate. Inasmuch as verdict and judgment were for the defendant on the second note, it is unimportant to discuss any of the questions in regard to it.

1. It is contended that there was no consideration for the note of September 11, 1883, and that the note was void under the statute of frauds, because there was neither a memorandum in writing nor a part performance. The contract executed at the same time with the note shows the consideration for it, and is such a memorandum in writing as satisfies the statute. If the validity of the note depended entirely upon the promise to plant an orchard of 100 fruit trees and to build a barn, it might well be held that there was no consideration for the promise, because defendant was under no obligation to do either, and plaintiff neither paid nor promised anything for such improvements; but, if any timber was unlawfully removed from the land, this would constitute a valid consideration. It is not necessary that the consideration be adequate. It is sufficient to sustain the promise if there be any. We therefore think it was not error to refuse to direct a verdict for the defendant.

2. It is next insisted that plaintiff cannot recover because she neither asked, nor did defendant refuse, to secure the note under the terms of the accompanying agreement. This statement was a part of the transaction, and it and the note must be construed together. *Sutton v. Beckwith,* 68 Mich. 303; *McNamara v. Gargett,* 68 Id. 454; *Dudgeon v. Haggart,* 17 Id. 273; *Eberts v. Selover,* 44 Id. 519; *Smith*

*v. Van Blarcom*, 45 Id. 371; *Singer Manufacturing Co. v. Haines*, 36 Id. 385. The failure to secure was a condition precedent to the right to sue, and demand and refusal were necessary to be shown. Plaintiff testified that she never asked the defendant to pay, and that she brought suit without having asked him for the amount, or presenting it in any way. She did not testify that she asked for security. Plaintiff claims, however, that such demand appears in the defendant's testimony. On defendant's cross-examination he testified to giving a certain lease to his son's wife. This question was then asked:

"And I see indorsed upon that lease the principal payment of all the rent due. That lease ran till 1897?"

This and other questions were answered, under objection and exception, as follows:

"*A*. I can't tell how many payments were made. I offered to do it. I came and asked your advice on it. At the time I subsequently took back the conveyance—I took a conveyance of all this land back from George. There was a mortgage on the land when I took it back to Mrs. Shattuck, and he was indebted to me at the time, and at the time I knew also that he was indebted to Mrs. Shattuck, my daughter. I knew he was owing her some. She had talked with me when she was letting him have money, —of the fact that she had let him have money. She never asked me repeatedly to secure her. She never asked me. Since that she has. * * *

"*Q*. So that, when you took back the titles to the 50 and 80, you owned the whole 160 acres, subject only to the mortgage there was on it?

"*A*. One mortgage on Charles' of $800, and one on George's of $1,000.

"*Q*. And at that time you had no other obligations?

"*A*. Yes, sir; I had some indebtedness,—that is, I had signed with Charley; I can't tell you how much. The two mortgages I had, I know, and the William Canfield mortgage amounted to about $2,400. I think it will show that on the records here. The mortgage was given to William Canfield by Charles Hart,—$800; 10 per cent. interest. Mrs. Shattuck never said anything to me about this indebt-

edness of George and Charles to her. I just told you that she had asked me different times if ·I would not secure her. That was while I had title to the whole 160 acres, after I had deeded it and taken back the titles, that she spoke to me about it.

"*Q*. She told you about how much she had let them have?

"*A*. As near as I can remember, she claimed that she had let, I think it was Charles, about $400, and George about the same, she thought. At the same time she wanted to know, I know, if I wouldn't sell her my claims; not sell them, but give my claims. She wanted to know if they kept up the interest. I said no; they didn't keep up one dollar to ten. Then she wanted to know how much they owed me. I said: ' Mandy, I can't state; I haven't looked it over; but it is more than I wish it was.' They didn't pay the interest on loans I made to them; they hadn't begun. I had to pay George for the lease of the house. I didn't pay it to George. I told you to pay it to Emma. My house burned five years ago last June,—the 14th of June. I never talked with her about giving her security. She has asked be, but I told her every time—. Once she came and said you sent her to me ,to see if she could get me to come down and see you with her; that you would arrange it so and so. I told her I wouldn't do it; I didn't do that kind of business."

The above is all the testimony bearing upon the question of demand for security. It seems entirely clear that this testimony had no reference to the $1,000 note, but to the money which was due from her brothers to her, and which she claimed her father had promised to pay.

3. Plaintiff evidently based her right to bring suit upon ·the evidence that the defendant had so disposed of his property to his children and grandchildren that he was unable to give security. It does not follow that, because one is possessed of little or no property, he cannot, through his friends or relatives, secure the payment of a debt. Whether the defendant was worth much or little was not the condition agreed upon. Her right of action would be

complete upon her demand, and his refusal, to furnish
security. The evidence, therefore, of the leasing and other
transfers of his property, was incompetent, as was also
evidence of the dealings between him and the other children.

4. On cross-examination, plaintiff testified as follows:

"The 40 acres of land was a gift to me. It was deeded
to me. The note to make up that portion of the gift he
had not fulfilled was also a gift, according to my theory."

It is contended that under this evidence the court should
have directed a verdict for the defendant, as requested.
We think, however, under all her testimony, it was a ques-
tion for the jury to determine what she meant by this.
The court, however, if requested, should have instructed
the jury that, if the note was intended as a gift, the
plaintiff could not recover, for in that event it amounted
to no more than a promise to give, which might be revoked
at any time. Delivery of the thing given is necessary to
pass title.

Judgment should be reversed, and a new trial ordered.

McGRATH, C. J. I think the judgment in this case
should be affirmed. Defendant denied the execution of the
notes in question, and gave notice of the statute of limita-
tions. Defendant, upon cross-examination, says:

"She never asked me repeatedly to secure her. She
never asked me. Since that she has. * * * I just told
you that she had asked me different times if I would not
secure her. That was while I had title to the whole 160
acres, after I had deeded it and taken back the titles, that
she spoke to me about it. * * * My house burned
five years ago last June,—the 14th of June. I never
talked with her about giving her security. She has asked
me, but I told her every time— Once she came and said
you [plaintiff's attorney] sent her to me to see if she could
get me to come down and see you with her; that you would
arrange it so and so."

Plaintiff insists that her father, by various conveyances and transfers, has disposed of all of his property to his other children and grandchildren, and that she protested against these acts because they left him without support, and without ability to meet his obligations to her. Her brothers were also indebted to her in the sum of $2,200, and in her conversations with her father she referred to this indebtedness as well as that of her father to her. The testimony of defendant, above given, is in some instances associated with her conversations regarding the indebtedness of her brothers to her, and undoubtedly refers to it, but in other instances it is not so associated, and does not necessarily apply to that indebtedness. The testimony comes to us in the narrative form, and statements made upon cross-examination are not necessarily related to those immediately associated with them.

The plain inference from this record is that, upon the trial below, the demand for security was not questioned. The defense was that defendant did not execute the notes in question, and that they were without consideration. In the charge of the court to the jury, no reference is made to the question of demand for security. No request was submitted by defendant upon the subject. The assignment under which defendant seeks here to raise the question is the refusal of the court to give a general request directing a verdict for defendant.

The judgment is affirmed.

LONG, MONTGOMERY, and HOOKER, JJ., concurred with McGRATH, C. J.