[No. 9056. Department Two. March 14, 1911.]

ANNA M. L. THOMSON, *Respondent* v̇. HEINREICH JACOB KOCH *et al.*, *Appellants.*[1]

USURY—DISCOUNTING COMMERCIAL PAPER—BILLS AND NOTES—NEGOTIABILITY. The discounting of a "wheat" note obligating the maker to grow and deliver certain wheat, is not usurious, within Rem. & Bal. Code, § 6250, providing that the discounting of "commercial" paper, shall be considered as a loan within the usury laws; since it is not commercial paper, within Rem. & Bal. Code, §§ 3392, 3396, providing that an instrument to be negotiable must be payable in money without any promise to do any additional act.

BILLS AND NOTES—NEGOTIABILITY—INDORSEMENT. The indorsement of a nonnegotiable "wheat" note, operates merely as an assignment and does not make the assignor liable thereon.

[1]Reported in 113 Pac. 1110.

USURY—DISCOUNTING PAPER—LIABILITY OF BORROWER—STATUTES. The discounting of a note, which was originally free from the taint of usury, is not usurious where no recovery was sought against the assignee and he did not. render himself liable thereon, within Rem. & Bal. Code, § 6250, providing that the discounting of commercial paper where the borrower makes himself liable as maker, guarantor, or indorser, shall be considered as a loan within the usury laws.

USURY—DEFENSES—USURIOUS TRANSFERS. The usurious discounting of a note and mortgage is no defense to a suit by the transferee against the maker.

APPEAL—REVIEW—CROSS-APPEAL—NECESSITY. The respondent having failed to appeal from a judgment in favor of appellant for costs, error therein cannot be ˙ corrected on affirming the judgment against appellant.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered May 27, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to foreclose a mortgage. Affirmed.

*Lovell & Davis*, for appellants.

*Warren W. Tolman*, for respondent.

MORRIS, J.—Appeal from a decree of foreclosure of mortgage, upon a defense of usury. There is no statement of facts in this case, and the question submitted must be determined upon our holding as to the decree being justified by the findings of fact, from which it appears, that on February 17, 1906, appellants Koch, being indebted to Daniel Schulz in the sum of $3,400, executed and delivered to Schulz the following instrument:

"$3,400.              ˙         ˙     Ritzville, Wash., 2-17-1906.

"On or before six years after date, without grace, I promise to pay to the order of Daniel Schulz thirty-four hundred and no-100 dollars in gold coin of the United States of America, of the present standard value, with interest thereon, in like gold coin, at the rate of 8 per cent per year from date until paid, for value received. Interest to be paid yearly

and if not so paid, the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of this note. And in case suit or action is instituted to collect this note, or any portion thereof, I promise and agree to pay, in addition to the costs and disbursements provided by statute, two hundred dollars in like gold coin, for attorney's fees in said suit or action.

"Due on or before 2-17-1912.          Heinreich Jacob Koch.
"At Ritzville, Wash.          Anna (X) Mary Koch.
                                                  "Her mark.
"Witnesses:          W. R. Cunningham, Sr.
                          "J. S. Graves.

"The above note is given with the understanding that Heinreich Jacob Koch will put 1-2 of the E. 1-2 of Sec. 25 and 19 N. R. 33, E. W. M., and 1-2 of the S. 1-2 of the S. 1-2 of Sec. 30, T. 19 N. R. 34, E. W. M., every year after 1906, in wheat, either fall or spring wheat, and deliver 1-2 of the wheat grown on this land, free of cost to Daniel Schulz, each year at some warehouse in Ritzville, Wash.; the receipts for the same to be taken in the name of Daniel Schulz, and when the whole amount of said wheat shall be delivered any year, then it shall be sold and the proceeds of sale shall be credited on the interest and principal of said note, and this system of payment shall continue on said note for six years, unless Heinreich Jacob Koch shall have delivered wheat sufficient to pay said note, both principal and interest. While it is understood that the delivery of half of the wheat each year is compulsory with Heinreich Jacob Koch, yet he has the privilege to deliver more wheat each year if he chooses to do so. After six years from the date of this note, the wheat payments will cease, and Heinreich Jacob Koch will pay the balance on said note, both interest and principal with money of the U. S., he, however, at any time is privileged to settle this note in U. S. money, but he cannot be forced to settle this note before the expiration of six years from the date of the note February 17, 1906. It is understood that 1-2 of the wheat grown, harvested and threshed on the E. 1-2 of Sec. 25 and 19 N. R. 33, E. W. M., in 1906, will be delivered in some warehouse in Ritzville, Wash., free of cost to Daniel Schulz, and when sold must be credited on the above note. The above note will be secured by a second mortgage on the E. 1-2 of Sec. 25, T. 19, N., R. 33, E. W. M., and the

S. 1-2 of the S. 1-2 of Sec. 30, T. 19 N. R. 34, E. W. M., all
of said land being in Adams county, Wash.

"Ritzville, Wash. Feb. 17, 1906  Heinreich Jacob Koch.

"Anna (X) Mary Koch.

"Her mark.

"Witnesses:          W. R. Cunningham, Sr.

"J. S. Graves."

On August 8, 1906, Koch and wife, to secure the indebted-
ness evidenced by this instrument, executed and delivered a
second mortgage to Schulz upon the lands therein described,
which mortgage and the instrument it secured were, on August
18, assigned to respondent for $2,800, of which sum Schulz
received $2,600, the balance being paid to one Cunningham
who negotiated the transfer. In addition to this assignment,
Schulz and wife executed and delivered to respondent, as
further security for the payment of the original $3,400 a
mortgage on other lands. Koch paid the interest on this in-
debtedness up to February 17, 1909, and $250 on the prin-
cipal, on March 17, 1908. On February 23, 1910, respondent
commenced foreclosure proceedings upon both mortgages,
because of default in the payment of interest due February
17, 1910. Appellants answered in the foreclosure proceed-
ings, claiming the transaction between respondent and Schulz
was a usurious one, and seeking the benefit of our usury
statute, which if applied would wipe out the entire indebted-
ness and leave a surplus of $386.30, in which sum they asked
judgment against respondent. Upon these facts the court
concluded, as a matter of law, that the transaction between
Schulz and respondent was a loan of $2,800, and was usu-
rious, and nothing was due from Schulz to respondent; that
this usury, however, did not taint the original indebtedness
of $3,400, represented by the note and mortgage executed
by Koch to Schulz and assigned to respondent, and that as
to this mortgage respondent was entitled to a decree of fore-
closure for the amount found due, some $3,150, with interest
from February 17, 1909. Schulz was given judgment for

costs.   From the decree so entered, Schulz and Koch appeal.

We might add that respondent in her brief states that she took a cross-appeal from the judgment because of the failure to award a foreclosure of the Schulz mortgage and his award of costs, but finding no such cross-appeal in the record here, we will treat the case only upon the Schulz and Koch appeal. Our statute, Rem. & Bal. Code, § 6250, provides:

"Every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of six per centum per annum where no different rate is agreed to in writing between the parties.   The discounting of commercial paper, where the borrower makes himself liable as maker, guarantor or indorser, shall be considered as a loan for the purposes of this chapter."

In order, therefore, to hold the transaction between respondent and Schulz usurious, we must first hold that the note from Koch to Schulz, transferred to respondent by Schulz writing his name on the back thereof, is "commercial paper" within the meaning of this section, and that the transaction was a discounting of such paper whereby Schulz made himself liable as "maker, guarantor or indorser."   The whole instrument, including the promise to pay in money and the agreement to deliver one-half the wheat grown each year as a payment, must be taken together and construed as one instrument.   Daniel, Negotiable Instruments, § 51; *Polo Mfg. Co. v. Parr*, 8 Neb. 379, 30 Am. Rep. 830; *Hill v. Huntress*, 43 N. H. 480; *Singer Mfg. Co. v. Haines*, 36 Mich. 385; *Weeks v. Medler*, 20 Kan. 57; *Shattuck v. Hart*, 98 Mich. 557, 57 N. W. 818.   So reading the instrument, it is not commercial paper, for it lacks an absolute essential to all "commercial paper," as that term is used in interest and usury statutes, in that it is not for the payment of money only, and is therefore not negotiable.

"No rule of commercial paper is better established than that which requires it to be for the payment of money and money only."   Randolph, Commercial Paper, § 96.

Our law relating to negotiable instruments, Rem. & Bal. Code, § 3392, provides:

"An instrument to be negotiable must conform to the following requirements  .  .  .

"(2)   Must contain an unconditional promise or order to pay a sum certain in money."

Rem. & Bal. Code, § 3396, provides:

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable."

The instrument before us violates these statutory requirements of negotiable instruments. It does not contain an unconditional promise to pay in money. It is payable in wheat, the delivery of which is by its terms made compulsory. It contains a promise to do an "act in addition to the payment of money," to deliver at least one-half the wheat crop each year at a warehouse in Ritzville. These provisions destroy its character as commercial paper or a negotiable promissory note, and make it a mere contract.

Many authorities might be cited in support of this view, but our statute is so plain it seems unnecessary to look beyond it. Not being a negotiable instrument or commercial paper, the transaction between respondent and Schulz was not a "discounting of commercial paper," and therefore not within the provisions of the usury law. Such transaction was nothing more than a sale or transfer of the rights of Schulz under the contract, and as such, the law permits any price to be agreed upon that is satisfactory to the parties. It may be admitted that respondent drove a hard bargain, and took advantage of Schulz's financial necessities, but such fact does not make the contract illegal, nor taint it with usury. Neither did Schulz's name on the back of the contract operate other than as an assignment of it. He did not, as required by the statute, thereby make himself "liable as maker, guarantor, or indorser." No liability whatever attached to Schulz by such act.

It was conceded by respondent when she brought the action that she was entitled to no judgment against Schulz, and none was sought; all that was asked as to him was the foreclosure of the second mortgage given to respondent. If it could be held that the transaction between Schulz and respondent was usurious, such a taint could not attach itself to the original transaction between Schulz and Koch, and invalidate that which was valid in its inception. Koch was in no wise connected with any usurious transaction, nor did he become a party to any contract that called for the payment of anything beyond legal charges. If it could be held that this so-called note was commercial paper, the making of it by Koch and its subsequent discounting by Schulz for his own benefit were two different transactions, the vice of the latter could not invalidate the former. Such, we believe, is the law:

"In a suit by the transferee against the maker it constitutes no defense that the paper was endorsed and discounted under a usurious contract at an unlawful rate of interest." Joyce, Defenses to Commercial Paper, § 304.

In *Gaither v. Farmers & Mechanics Bank*, 1 Pet. 37, it is said:

"And this is unquestionably true; for the rule cannot be doubted, that if the note be free from usury in its origin, no subsequent usurious transactions respecting it, can affect it with the taint of usury."

The same rule is announced in *Nichols v. Fearson*, 7 Pet. 103, in this language:

"There are two cardinal rules in the doctrine of usury which we think must be regarded as the common place to which all reasoning and adjudication upon the subject should be referred. The first is, that to constitute usury there must be a loan in contemplation by the parties; and the second, that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction."

The judgment as against Koch was therefore right under

any theory. The refusal to award Schulz a judgment for the excess of the charges under the usury statute over the amount due on the note was also correct. The judgment in favor of Schulz for costs, not having been appealed from, cannot be reviewed. The judgment is therefore in all respects affirmed.

DUNBAR, C. J., CROW, and CHADWICK, JJ., concur.