[No. 18354. Department One. September 22, 1924.]

C. W. MARTIN, *as Trustee in Bankruptcy of Mitchell Motor & Service Company, Appellant,* v. W. G. McAVOY *et al., Respondents.*[1]

USURY (7)—DISCOUNTING COMMERCIAL PAPER—NEGOTIABILITY—ASSIGNMENT OF CONTRACT. A conditional sales contract of an automobile, including in its provisions a promissory note for the price, is not commercial paper or within the provision of the usury laws (Rem. Comp. Stat., § 7299) as to the discounting of commercial paper, as between the assignor and assignee of the contract.

SALES (179-1)—CONDITIONAL SALES—ASSIGNMENT OF CONTRACT——EFFECT—USURIOUS LOANS. Where a conditional sales contract of an automobile retained title, and embodied a promissory note for the price, a written assignment of the bill of sale, guaranteeing its payment and performance, passes title to the car and merely renders the assignor liable as a guarantor, in case the assignee elects to recover the balance of the debt.

Appeal from a judgment of the superior court for King county, Honorable Marion Edwards, Judge *pro tempore,* entered April 3, 1923, dismissing an action

[1]Reported in 228 Pac. 694.

for usurious interest paid and to recover personal property. Affirmed.

*Roberts & Skeel, N. A. Pearson,* and *Gates & Helsell,* for appellant.

*Bausman, Oldham & Eggerman* and *Walter L. Nossaman,* for respondents.

HOLCOMB, J.—This action is to recover alleged usury paid by the bankrupt to respondents McAvoy, and in the second cause of action to recover cars, or the value thereof, re-possessed by McAvoy upon the failure of vendees on conditional sale contracts to complete their payments as agreed. At the time of the bankruptcy of the company, there were outstanding contracts assigned to McAvoy of approximately $138,000.

In 1919, McAvoy and the Mitchell Company, which later became bankrupt, entered into an arrangement whereby, when the Mitchell Company sold automobiles on time, McAvoy would buy the conditional sale contracts under which the cars were sold. A certain cash payment was in each instance required of the purchaser, the balance being payable in monthly installments. McAvoy, in buying these contracts, paid the Mitchell Company the face of the contract less a certain flat discount, usually six per cent, but in some instances running as high as ten per cent. The conditional sale contracts were on a printed form employed by the company, which included as a part of the same instrument a promissory note. When the contract was transferred by the company to McAvoy, it signed the form of transfer printed on the back of the conditional sale contract, which was uniformly as follows:

"For value received we hereby assign all our right, title and interest in and to the within memorandum of

conditional sale and note, and in and to the property therein described, and all moneys payable thereunder, to W. G. McAvoy, and hereby guarantees the payment of all moneys due, or to become due, under said memorandum of conditional sale, and also the full performance by the vendee therein named of all vendee's promises and covenants; and we hereby consent that the time of payment of any of the said installments therein provided may be extended at the request of the vendee."                [Signature.]

These contracts, which were taken by the company and assigned to McAvoy, exactly corresponded to the increased price which the Mitchell Company exacted from the purchasers. As is common with such dealers, the company made a different price to a cash purchaser and to a time purchaser. For instance, if the cash price of a car was $1,000, the time price would be six per cent higher, usually, or $1,060. The company then transferred such contract, together with its title as vendor of the automobile, to McAvoy, who paid the Mitchell Company its cash price, as, in the instance named, $1,000 in full. The discount was paid by the purchaser of the car.

On these conditions we are unable to see any usury as between the company and McAvoy, whatever there may have been as to the purchasers of cars.

The first claim of appellant is that, under Rem. Comp. Stat. § 7299 [P. C. § 3155], these transactions were the discounting of commercial paper where the borrower had made himself liable as maker, guarantor or endorser, and therefore constitute usurious transactions. It is also contended that the transactions were usurious loans fraudulently disguised as sales, and in fraud of the creditors of the bankrupt.

(1) As to the first contention, these contracts are not commercial paper nor negotiable instruments.

Commercial paper is defined to be: "Negotiable paper given in due course of business, whether the element of negotiability be given it by the law merchant or by statute" Bouvier, Law Dictionary; Fed. Case No. 13708. These instruments being each all in one instrument are mere contracts. *Thomson v. Koch,* 62 Wash. 438, 113 Pac. 110. The assignment and transfer thereof was therefore not the discounting of commercial paper, but the mere assignments of contracts. They are, therefore, not within the provisions of the usury law as to the discounting of commercial paper under the statute. *Thomson v. Koch, supra.* See, also, *Harrison v. Turner,* 27 Cal. App. 423, 150 Pac. 395; *Wright v. Horton,* 32 Idaho 516, 185 Pac. 555. Consequently the assignments of such contracts may be for any price which is satisfactory to the parties and not constitute usury. *World Finance Co. v. Westlake Garage Co.,* 115 Wash. 45, 196 Pac. 586.

(2) Where contracts such as those involved and the notes are each embodied in one instrument, the vendor in the conditional sale contract reserving title until the contract price is fully paid, may sell and transfer its title, and the intention to do so is manifested by the written endorsement on the instrument transferring all the vendor's right, title and interest in and to the same. And where a conditional sale contract retaining title in the vendor embodies a promissory note for the balance due, all as a part of one instrument, an assignment of the conditional bill of sale and the guaranteeing of its payment and fulfillment merely renders the assignor liable as a guarantor, *should the assignee elect to seek* recovery of the balance of the debt. *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235.

Under the facts here, the above cases decide all the questions at issue, and there is no need for further discussion.

Affirmed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.