[No. 21897. Department One. July 1, 1929.]

NATIONAL MORTGAGE COMPANY, *Appellant*, v. GENEVIEVE KING, *Respondent*.[1]

*Bausman, Oldham & Eggerman*, and *Edw. L. Rosling*, for appellant.

*Clarence R. Anderson*, for respondent.

HOLCOMB, J.—In a replevin proceeding, brought by appellant to recover a Buick car possessed by respondent, the trial court gave judgment that the title to the car was in respondent, from which this appeal arises.

Respondent bought the car from a copartnership consisting of Robert Bryant and J. L. Lynch, doing business under the firm name and style of Bryant Motor Company. This company was engaged in the business of selling used automobiles. Respondent owned

[1]Reported in 278 Pac. 697.

a Nash roadster. On June 9, 1928, in the forenoon, she called at the sales room of the Bryant Motor Company and looked at the Buick car in question. She then showed her Nash roadster to the partners for appraisal. In the afternoon of the same day, she returned to the place of business of the Bryant Motor Company, bringing with her the Nash roadster, at which time the Bryant Motor Company, represented by both partners, agreed to allow her four hundred dollars credit for the Nash roadster on the purchase of the Buick car, the sales price of which was quoted to her as six hundred and fifty dollars.

Respondent had a diamond ring which she desired to turn in as payment for the balance of the purchase price of the Buick car. She talked to Lynch concerning the payment of the balance by the diamond ring, and after he had conferred with his partner, they accepted the ring as payment in full of the balance due for the Buick automobile. A conditional sales contract had been prepared by Lynch, either in duplicate or triplicate, for the purchase of the Buick. Their practice was to make a pink copy of the conditional sales contract for delivery to the purchaser; the other two copies being upon white paper. Respondent, a woman fifty-four years old, knew nothing about automobile papers. After Bryant and Lynch had agreed to accept her diamond ring in full payment of the balance, Lynch endorsed upon the back of the pink copy of the conditional sales contract, which was to be her copy, a list of the twelve payments that were to have been made upon the conditional sales contract, each for the sum of $27.75, totaling $333, and opposite a bracket of the same, the following endorsement:

"Received payment on the above payments. To be returned to Bryant Motor Company on receipt of bill of sale. Bryant Motor Co. by J. J. Lynch."

This pink copy had been signed earlier by the Bryant Motor Company by J. J. Lynch, and it was then delivered to respondent. The white copies were left in the desk by Lynch not signed by him. Shortly thereafter, Lynch absconded in a stolen car. After his departure, Bryant discovered a pawn ticket for the diamond ring and the white copies of the contract for the Buick car. The pledge upon the ring was later foreclosed. A white copy of the contract was executed by Bryant and assigned to appellant on June 15, 1928, six days after the execution of the contract. Appellant had no knowledge of the diamond transaction. It made no effort to ascertain from respondent whether, during the six days elapsing after the execution of the contract and the delivery of the Buick car to her, she had paid the balance due or anything on the contract. On June 18, 1928, appellant wrote to respondent informing her that it had recently purchased the conditional sales contract covering the unpaid balance on her Buick coupe; that the contract called for twelve monthly payments of $27.75 each, beginning July 9, and each month following until paid; that, if the same was not in accordance with her understanding, to kindly confer with appellant immediately; that appellant expected the payments to be made promptly at its office; that, if respondent should be able to retire the balance before maturity, appellant would credit her with the discount for the time paid in advance. Respondent received the letter but paid no attention to it for the reason that she had paid in full for the car. Later, upon demand, she refused to make any more payments, whereupon this action was begun.

The trial court made findings of fact in accordance with the foregoing statement of facts, among other things, finding that the Bryant Motor Company gave to respondent a receipt in full for the complete bal-

ance and all installments due on account of the contract by so marking her copy of the contract. It was also found that the Bryant Motor Company failed to advise appellant of the payments in full having been made on the contract.

Upon the findings so made, the court concluded that respondent was the rightful and lawful owner of the Buick coupe and entitled to the possession thereof. Judgment was entered accordingly.

Appellant proposed more complete findings and conclusions of law to be made in its favor, but the only error claimed and argued is that the findings made were erroneous in holding that appellant and not respondent should bear the loss.

It is conceded by appellant that respondent was innocent in the transaction, but it is claimed that appellant was also equally innocent and that, having received the *indicia* of ownership by the assignment of the conditional sales contract from the Bryant Motor Company to appellant, it is entitled to protection as an innocent, *bona fide* purchaser. Appellant claims the benefit of our oft-repeated rule that of two innocent persons, one of whom must suffer by the fraud of a third person, he who has put it in the power of such third person to commit the fraud must be the sufferer.

It is argued that the practice of automobile vendors in disposing of their conditional sales contracts to financing concerns is so general and notorious that courts will take judicial knowledge of it. But, even so, that does not mean that such general practice will in all cases bind all persons dealing with such vendors to the extent of rendering innocent and blameless automobile financing concerns who have dealt with such vendors.

It is contended that respondent was guilty of neglect

in signing three copies of these automobile conditional sales contracts, retaining one herself and permitting the other two to remain in the possession and control of her vendor. She testified, however, with every appearance of candor and truthfulness, that she was not familiar with automobile paper and that she supposed when she paid in full for the car she got and it was so noted on her contract that the transaction was ended.

It cannot be contended that the Bryant Motor Company, having delivered to respondent a contract receipted in full, could assert any rights against her.

Appellant did not purchase commercial paper. *Martin v. McAvoy,* 130 Wash. 641, 228 Pac. 694. The buyer of such paper as here involved, acquires no rights where the seller had none. *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340, 3 A. L. R. 235; *Bank of California v. Danamiller,* 125 Wash. 255, 215 Pac. 321, 36 A. L. R. 753. Manifestly, appellant's assignor of this contract had no right or title to assign, in the absence of inexcusable neglect, ratification, or some element of estoppel on the part of its vendee.

Had appellant purchased this contract months after its execution and delivery to respondent, that is, after monthly payments had become due, it certainly would have been incumbent upon it to inquire into the state of the account between its assignor and the purchaser. There were no instruments of record in this case to which reference could and should be made, as there were in cases cited by appellant upon the question of the rights of two or more persons concerned in the sale of personal property and conditional sales contracts affecting the title thereto. Such was true in the case of *Martin v. McAvoy,* 130 Wash. 641, 228 Pac. 694, and

*Long v. McAvoy,* 133 Wash. 472, 233 Pac. 930, 236 Pac. 806. Neither are any of the cases referred to in those two cases, or in other cases cited by appellant, of any material assistance in this matter.

As was said in *Long v. McAvoy, supra:*

"Comparative innocence ought, it seems to us, to be the principle upon which this case should be decided. Where both parties to a suit are, in a general sense, innocent, but one must suffer, there ought to be no rules of law which would stand in the way of placing the loss on him who is the least innocent."

It was also observed in that case that:

"This case has given us very much trouble. We realize that the conclusion to which we have come apparently works a hardship on the respondent, but a contrary conclusion would work an even greater hardship on the appellant."

Appellant, being familiar with the practices and customs of automobile vendors, knows that a copy of the instrument, whatever it is, conferring title or right of possession to the purchaser, is given the purchaser. Some burden should be placed on a purchaser of such contracts to ascertain what was the true contract entered into with the purchaser, especially where it has not become a matter of public record. In that regard, appellant was imprudent, apparently relying simply upon the integrity of the sellers of the car rather than desiring to inquire as to the true contract entered into.

While every case presents its own peculiar facts, this one seems to us to present a situation where the most innocent of the parties involved here is respondent. She is, therefore, the one who should be protected.

We consider the judgment of the trial court right, and it is affirmed.

MILLARD, TOLMAN, FULLERTON, and BEALS, JJ., concur.