[No. 29522. Department One. February 19, 1945.]

CHARLES F. HAFER, *Appellant*, v. JOHN SPAETH, *Respondent*.[1]

[1] Reported in 156 P. (2d) 408.

*C. E. Lovell,* for appellant.

*Brown & Brown,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover possession of a piano which plaintiff's assignor formerly had owned and had sold under a conditional sales contract. Defendant's answer consisted of a general denial and an affirmative defense alleging usury, which, in turn, was denied by the plaintiff in his reply. The action was tried to the court

without a jury, resulting in a decision unfavorable to the plaintiff. After denying plaintiff's motion for a new trial, the court made findings of fact, from which it concluded that the action should be dismissed. Judgment was entered accordingly, and plaintiff appealed.

No statement of facts has been brought to this court, and therefore the factual situation of the case is to be found in the uncontroverted portions of the pleadings, together with the findings of the trial court.

On August 4, 1936, R. B. Oslund, doing business as Oslund Piano House, the vendor, entered into a conditional sales contract with one Stanley Headrick, as vendee, wherein the former agreed to sell, and the latter agreed to purchase, a Gulbransen piano for the sum of one hundred seventy-five dollars, to be paid as follows: thirty dollars cash, upon the signing and delivery of the contract, and the balance in monthly installments of five dollars commencing September 4, 1936, "with $3.50 handling charge per month or a fraction thereof." It is this "handling charge" which has given rise to the present controversy. The conditional sales contract also contained a forfeiture clause and other provisions usually found in such instruments.

During the period between August 4, 1936, and January 19, 1939, which was approximately the interval prescribed by the contract for full performance of its terms, the vendee, Headrick, paid at somewhat irregular times the total sum of one hundred sixty dollars on the stated purchase price of the piano, leaving, on the date last mentioned, an unpaid balance of fifteen dollars of the principal amount. Thereafter, but prior to the commencement of this action, Headrick transferred the piano to John Spaeth, the respondent herein, who at the same time purchased all of Headrick's rights under the terms of the conditional sales contract. The vendor, Oslund, likewise before the commencement of the present action, assigned and transferred his claim under the contract to the appellant herein, for collection.

In his complaint appellant alleged that the piano was sold to Headrick under the conditional sales contract; that the terms of the contract "have not been complied with";

that the vendor is entitled to the possession of the piano; that the respective interests of the original parties were transferred as above related; that the appellant had demanded of the respondent possession of the piano and rental therefor; that such rental amounted to two hundred dollars; and that the value of the piano was five hundred dollars. In the prayer of his complaint appellant asked that either he be awarded the possession of the piano or have judgment for its value, and that he also have judgment in the sum of two hundred dollars for the rental of the property. In this connection, it may be stated that the conditional sales contract contains no provision relative to the rental value of the piano or conferring upon the vendor the right to make a rental charge.

Respondent in his answer denied that there had been any failure on the part of either himself or Headrick to comply with the terms of the conditional sales contract, or that any sum was due as rental, or that the value of the piano exceeded the sum of one hundred dollars. The answer then affirmatively alleged that payments totaling one hundred sixty dollars had been made by Headrick, leaving an unpaid balance of fifteen dollars on the original purchase price; that no demand for such balance had ever been made and that no notice fixing the time of forfeiture of the contract had ever been given; that the "handling charge" provided in the contract *constituted interest*; that the charge amounted to more than twelve per cent on the unpaid balance of fifteen dollars and was therefore usurious; and that the amount of such usury, being in excess of the balance owing on the purchase price, constituted an offset thereto and effected an extinguishment thereof.

Appellant in his reply denied the affirmative matter contained in the answer, except as alleged in his complaint.

The trial court made findings affirming the fact that the piano had been sold under conditional sales contract as hereinbefore stated, and incorporated in its findings a copy of that instrument. The court also found that the respective interests of the original parties to the contract had been transferred as above described; that the balance owing on

the principal amount on January 19, 1939, was fifteen dollars; and that the piano was worth three hundred dollars. The court then specifically found, with respect to the issue here involved, as follows:

"That said contract provides for a handling charge of $3.50 for each month or fraction thereof; that said charge amounted to more than 12 per cent per annum on the contract price of said piano; *that said charge constituted interest on said account* and was usurious and the amount thereof so reserved amounts to more than $15.00, the balance of the purchase price, and is an offset to and extinguishes the same." (Italics ours.)

The questions presented on this appeal relate solely to the matter of usury. Appellant's contentions are: (1) that the usury law of the state of Washington does not apply to conditional sales of personal property; and (2) that, in any event, the respondent, who was not the original vendee in the conditional sales contract, cannot take advantage of any usury affecting the original transaction.

Usury is of purely statutory creation, and in the absence of statutory restriction parties may ordinarily contract for any interest they see fit. *Missouri, K. & T. Trust Co. v. Krumseig,* 172 U. S. 351, 43 L. Ed. 474, 19 S. Ct. 179; 66 C. J. 160, Usury, § 37; 27 R. C. L. 203, Usury, § 1; Webb, Usury, 3, § 5.

In the state of Washington, the statutory law with reference to usury, in so far as it is pertinent to this case, is contained in Rem. Rev. Stat., § 7300 [P. C. § 3156], reading as follows:

"Any rate of interest not exceeding twelve (12) per centum per annum agreed to in writing by the parties to the contract, shall be legal, and no person shall directly or indirectly take or receive in money, goods, or thing in action, or in any other way, any greater interest, sum or value *for the loan or forbearance* of any money, goods or thing in action than twelve (12) per centum per annum." (Italics ours.)

The essential elements of usury are: (1) a loan or forbearance, express or implied; (2) money or its equivalent constituting the subject matter of the loan or forbearance;

(3) an understanding between the parties that the principal shall be repayable absolutely; (4) the exaction of something in excess of what is allowed by law for the use of the money loaned or for the benefit of the forbearance; and, in some jurisdictions, (5) an intent to exact more than the legal maximum for the loan or forbearance.

To determine whether all these essential elements are present, the courts will look through the form of the transaction and consider its substance. If all the requisites are found to be present, the transaction will be condemned as usurious, but, if any one or more of them are lacking, the parties cannot be charged with a usurious practice. The cases are uniform in their acceptance of these principles. 66 C. J. 174, Usury, § 65; 27 R. C. L. 208, Usury, § 9.

■ Furthermore, the character of a contract with respect to usury is determined at the time the contract is made; and, if the contract in its inception is unaffected by usury, it cannot be invalidated by a subsequent transaction. *Siebert v. Hall* (C. C. A. 8th), 63 F. (2d) 517, and cases therein cited; 66 C. J. 173, Usury, § 63; 27 R. C. L. 208, Usury, § 9.

■ The substructure of a usurious transaction is found in the first two elements above enumerated. To constitute usury there must be a loan or forbearance of money or its equivalent, and where there is no such loan or forbearance there can be no usury. A wealth of cases upholding this pronouncement may be found in the footnotes appearing in 66 C. J. 180, Usury, § 73, and in 27 R. C. L. 213, Usury, § 14. The principle is forcefully expressed in *Nichols v. Fearson,* 32 U. S. (7 Pet.) 103, 108, 8 L. Ed. 623, in the following language:

"There are two cardinal rules in the doctrine of usury, which we think must be regarded as the common-place to which all reasoning and adjudication upon the subject should be referred. The first is, that to constitute usury, there must be a loan in contemplation by the parties; and the second, that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction."

Later digests furnish citations of an equal wealth of cases recognizing and affirming the principle above expressed.

Of the many recent cases, we cite but a few: *Siebert v. Hall, supra; General Motors Acceptance Corp. v. Mid-West Chevrolet Co.* (C. C. A. 10th), 66 F. (2d) 1; *Oil City Motor Co. v. C. I. T. Corp.* (C. C. A. 10th), 76 F. (2d) 589, 104 A. L. R. 240; *Dunn v. Midland Loan Finance Corp.*, 206 Minn. 550, 289 N. W. 411; *Commercial Credit Co. v. Tarwater*, 215 Ala. 123, 110 So. 39, 48 A. L. R. 1437.

█ The word "loan" imports an advancement of money or other personal property to a person, under a contract or stipulation, express or implied, whereby the person to whom the advancement is made binds himself to repay it at some future time, together with such other sum as may be agreed upon for the use of the money or thing advanced. *State v. Larson*, 119 Wash. 259, 205 Pac. 373; *Embola v. Tuppela*, 127 Wash. 285, 220 Pac. 789; *First Bank of Cordova v. Tjosevig*, 138 Wash. 231, 244 Pac. 736; 66 C. J. 181, Usury, § 74; 27 R. C. L. 220, Usury, § 21; 25 Words and Phrases (Perm. ed.) 435 *et seq.*

█ The term "forbearance" as used in the law of usury, signifies a contractual obligation of a lender or creditor to refrain, during a given period of time, from requiring the borrower or debtor to pay a loan or debt then due and payable. *Murphy v. Agen*, 92 Cal. App. 468, 268 Pac. 480; *Graybeal Co. v. Cook*, 111 Cal. App. 518, 295 Pac. 1088; *Johnson Oil Refining Co. v. Smoot*, 242 Ill. App. 438; *Heilos v. State Land Co.*, 113 N. J. Eq. 239, 166 Atl. 330; 2 Bouvier, Law Dictionary (3d Rev.) 1254; 66 C. J. 192, Usury, § 100; 17 Words and Phrases (Perm. ed.) 231.

█ Manifestly, under these definitions, there was no "loan" involved in the transaction with which we are here concerned. Oslund, the vendor named in the contract, was not engaged in the business of loaning money or chattels, nor did he in this instance loan any money or property to the vendee. He was regularly engaged in the business of selling pianos, and in this particular transaction he simply contracted to sell to a purchaser a definitely described article of merchandise. On the other hand, Headrick, the vendee named in the contract, did not seek to obtain a "loan" of money for general use nor even a *loan* of a par-

ticular piano for temporary use. He was interested only in the purchase of a specifically described musical instrument. He did not agree to repay a borrowed sum of money nor did he agree to return the piano at any time. The transaction contemplated a sale and purchase of personal property upon certain terms and for a specific amount, payable in installments at definite times. In their respective pleadings, the parties referred to the transaction as a conditional sales contract, and the trial court specifically found that the parties had entered into an agreement of that kind.

In *Allen v. Graaf*, 179 Wash. 431, 38 P. (2d) 236, the basic disputed question was whether a certain transaction constituted a sale of real estate, or a loan secured by the same property. The defendant alleged that it was a loan and that, as such, it was tainted with usury. The trial court held the transaction to be a sale, not a loan. On appeal, this court held that the evidence supported the finding and that since the transaction was a sale, rather than a loan, the defense of usury was not available.

In the case of *Austermuhl v. Wotton*, 120 Wash. 376, 207 Pac. 662, a similar contention was made with respect to a transaction involving personal property. The court found that the transaction was a sale and that therefore an action for the recovery of alleged usury could not be maintained.

It is also manifest that, under the foregoing definitions, there was no "forbearance" involved in the transaction with which we are here concerned. There was no indebtedness existing between the parties to the conditional sales contract at the time the contract was made, nor did the contract provide for the exaction of any additional consideration for extending the time of payment of any installment thereafter becoming due and payable. The contract simply provided the terms upon which the vendor was willing to sell, and upon which the purchaser expressed his willingness to buy, the piano. In other words, the transaction was one which contemplated the sale of a chattel upon specified terms, and not one which exacted a consid-

eration for the extension of payment of an existing or prospective indebtedness.

Respondent endeavors to distinguish the *Allen* and *Austermuhl* cases, referred to above, from the case at bar, on the ground that the two cited cases involved outright sales, while the instant case involves a conditional sales contract. In our opinion, the distinction creates no difference in result.

In almost all jurisdictions a conditional sale is held to be a sale in which the vendee receives the possession and right of use of the goods sold, but the transfer of the title to the vendee is made dependent upon the performance of some condition or the happening of some contingency, usually the full payment of the purchase price. 47 Am. Jur. 7, Sales, § 828. This court is in accord with that concept. *Inland Finance Co. v. Inland Motor Car Co.*, 125 Wash. 301, 216 Pac. 14. This court has also clearly explained the functions of a conditional sales contract and has defined the character of relationship existing between the parties to such instrument. In *Lyon v. Nourse*, 104 Wash. 309, 176 Pac. 359, and in *Hughbanks, Inc. v. Gourley*, 12 Wn. (2d) 44, 120 P. (2d) 523, 138 A. L. R. 658, we declared that it is not the office of a conditional bill of sale to secure a loan of money, but, rather, only to permit an owner of personal property to make a bona fide sale on credit, reserving title in himself for security until the purchase price is fully paid.

In *Lahn & Simmons v. Matzen Woolen Mills*, 147 Wash. 560, 266 Pac. 697, we said:

"A contract of conditional sale contemplates the relation of vendor and vendee. [Citing authority.] . . .

"In a contract of conditional sale the relation of debtor and creditor is not created. [Citing additional authority.]"

A great many of the cases dealing with transactions of the kind presented here speak of conditional sales contracts as "sales on credit" or "sales on deferred payments." The vast majority of those cases hold, however, that such sales do not constitute loans, nor come within the ban of the law against usury unless it is evident that the transaction, though in outward form a sale and purchase, was but a cloak to hide a usurious loan. Quite a number of the cases

quote from, and proceed upon the authority of, 27 R. C. L. 214, Usury, § 15, wherein appears this statement:

"On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense."

The same idea is expressed in 66 C. J. 181, Usury, § 75, in the following language:

"It is manifest that any person owning property may sell it at such price and on such terms as to time and mode of payment as he may see fit, and such a sale, if bona fide, cannot be usurious, however unconscionable it may be, and this is so even though a bonus and commission are included in the purchase price. But the law will not permit a usurious loan to hide itself behind the form of a sale."

And further, on page 183, § 76:

"A vendor may fix upon his property one price for cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith, such a transaction is not a loan, and not usurious. This rule is particularly applicable where the article sold is subject to depreciation in value, as, for instance, an automobile."

In addition to the many cases cited in the footnotes to the foregoing texts, a great number will be found in the annotations appearing in 48 A. L. R. 1442 and 57 A. L. R. 880. Among the more recent cases are the following: *Rose v. Wheeler,* 140 Cal. App. 217, 35 P. (2d) 220; *Stevens v. Grossman,* 100 Ind. App. 417, 196 N. E. 123; *General Motors Acceptance Corp. v. Swain,* 176 So. (La. App.) 636; *Keefe v. Bush & Lane Piano Co.,* 247 Mich. 82, 225 N. W. 585; *Dunn v. Midland Loan Finance Corp.,* 206 Minn. 550, 289 N. W. 411; *Sayler v. Brady,* 63 N. D. 471, 248 N. W. 673; *Conway v. Skidmore,* 48 Wyo. 73, 41 P. (2d) 1049.

The reason frequently given by the courts for making a distinction between the effect of a bona fide sale and that of a loan, in so far as the law of usury is concerned, is aptly expressed in the case of *General Motors Acceptance Corp. v. Weinrich*, 218 Mo. App. 68, 262 S. W. 425, in the following statement:

"The reason is that the statute against usury is striking at and forbidding the exaction or receipt of more than a specified legal rate for the *hire of money* and not of anything else; and a purchaser is not like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller."

Respondent relies strongly on the case of *Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 298 Pac. 705, 79 A. L. R. 29, in support of his contention that a vendee in a conditional sales contract may assert the defense of usury. In that case, a dealer in used cars, having sold a secondhand automobile to the defendant, under a conditional sales contract, later sold the contract to a finance company, the plaintiff in the action. The contract was in the usual form, except that it contained certain provisions in effect reciting that, in order that the purchaser might obtain the credit specified therein, the contract should be construed as a negotiable instrument, constituting an unconditional promise to pay and cutting off the defenses of fraud and, by implication, usury. The purchaser of the automobile defaulted in his payments, and the finance company brought suit to recover possession of the property. The defendant purchaser admitted the execution of the contract and his failure to make the payments, but set up as a counterclaim (1) that "the sum of $120 was added to said contract as interest, and constituted usury to said amount," and (2) that the dealer had misrepresented to him the mechanical condition of the car, in consequence of which the purchaser was required to have the car repaired at a cost of two hundred dollars.

The plaintiff's demurrer to the counterclaim in that action was sustained, and, upon the defendant's refusal to plead further, judgment was entered as prayed for in the com-

plaint. On appeal by the defendant, this court held that the conditional sales contract was not a negotiable instrument, despite the recitals therein, and that under Rem. Rev. Stat., § 266 [P. C. § 8353], the vendee in the contract could set off his demands against the respondent finance company.

In view of the inference that might be drawn from some of the language appearing in the opinion in that case, we have examined the record therein, and we find that the only questions presented there were: (1) whether the parties to the contract could change the actual legal character of the written instrument by incorporating therein a provision to the effect that it was to be construed as a negotiable instrument; and (2) whether the plaintiff, having elected to cancel and rescind the contract, could thereafter sue to enforce the provision therein relating to attorney's fees. No question was presented in that case as to whether the conditional sales contract constituted a "loan or forbearance" within the meaning of the usury statute. In fact, the suit was wholly a friendly action, brought solely for the purpose of obtaining an interpretation of the provision relating to the negotiability of the contract. In the introductory argument advanced in his brief by Van Der Volgen as appellant in that case occurs the statement that "because of the interest of the parties involved in an interpretation of these provisions in a contract, the handling of this case has become a friendly matter between the attorneys, and the pleadings were purposely drawn in such a manner as to allow no dispute as to the facts."

In view of that statement and of the nature of the argument contained in both briefs in the *Van Der Volgen* case, this court was not required and, we think, did not assume, to decide any question other than the one there presented. The broad language of that opinion, or the inferences that might be drawn therefrom, are therefore not to be taken as an intention to state a rule with reference to a question which was not there involved. That case has no controlling effect upon the question with which we are here concerned.

 We are mindful of the fact that, in the case at bar, the trial court, in one of its enumerated findings of fact, stated "that said charge [handling charge] constituted interest." That statement, however, was but a conclusion of law based upon the facts previously found by the court and likewise admitted in the pleadings. As stated above, the court specifically found that the parties had entered into an agreement which, in law, was a conditional sales contract and that the contract contained a provision calling for a "handling charge" of three dollars and a half for each month or a fraction thereof. From these established *facts* the court drew the conclusion that the handling charge "constituted" *interest* and, because the charge amounted to more than twelve per cent per annum on the principal of the purchase price of the piano, held it to be usurious.

That conclusion does not follow from the facts found. The parties entered into a written agreement for the sale and purchase of a specific article of personal property, upon stated terms and conditions. In the absence of fraud, misrepresentation, or mistake, the agreement was binding upon the parties, and the handling charge would be enforcible as a part of that agreement, unless, as such charge, it was found to be an unconscionable exaction. However, there is no finding on these suggested possible factors. We note, also, that there is no finding or conclusion on the question of whether or not appellant *waived* the handling charge, although it is apparent from both the pleadings and the findings that, while all of the monthly installments except fifteen dollars have been paid, with more or less regularity, no part of the handling charge has ever been paid, or, seemingly, ever been specifically demanded.

In view of the absence of any statement of facts, we are unable to tell what questions were raised or considered in the superior court other than the question of usury. For this reason, and because forfeitures are not favored in law, particularly where good reason exists for refusing such remedy entirely or for granting it only on certain conditions, we believe that a new trial should be had in order

that all questions affecting the rights of the parties in the premises may be determined.

The judgment is therefore reversed, and the cause will be remanded for such further proceedings as are not inconsistent with the views herein expressed.

BEALS, C. J., JEFFERS, and GRADY, JJ., concur.

MILLARD, J. (concurring)—I concur in the foregoing. At page 452 of opinion in *Motor Contract Co. v. Van Der Volgen, supra,* we were addressing ourselves to the language in *the conditional sales contract* which was, and the author of the opinion neglected to so say, a financing contract; and, of course, had to do with the borrowing of money.

