[No. 1322-1.    Division One—Panel 1.    August 13, 1973.]

PATERSON P. FUGITT, *Respondent*, v. VICTORIA P. MYERS, *Individually and as Executrix, Appellant.*

ST. LUKE'S GENERAL HOSPITAL, *Respondent*, v. VICTORIA P. MYERS, *Individually and as Executrix, Appellant.*

ERIC C. JOHNSON, *Respondent*, v. VICTORIA P. MYERS, *Individually and as Executrix, Appellant.*

*Philip L. Burton,* for appellant.

*McCush, O'Connor, Thompson & Hayes* and *George Mc-Cush,* for respondents.

SWANSON, C.J.—Under what circumstances will liability for the expenses of the last sickness of a deceased person be placed upon a party who authorized the services giving rise to such expenses rather than upon the decedent's estate pursuant to RCW 11.76.110? That is the primary question presented by this appeal..

The operative facts as found by the trial court and confirmed by our review of the record to be supported by

substantial evidence are as follows: Jack T. Fugitt died in Bellingham, Washington, on December 7, 1968, at St. Luke's General Hospital (hospital) after approximately 6 months hospitalization. The trial court described the circumstances of the decedent's hospitalization in this language:

On a visit to the home of the plaintiff Paterson P. Fugitt, who is a brother of the said Jack T. Fugitt, it became necessary, because of the physical disability of the said Jack T. Fugitt, for said plaintiff to arrange for his admission to St. Luke's General Hospital in Bellingham, Washington for care and services.

Finding of fact No. 4, in part. The trial court also found that Paterson P. Fugitt had paid for the care and services rendered to the decedent in the total sum of $9,500.34, and that there were unpaid balances of $982.50 and $780 owing to the hospital and the decedent's physician, Dr. Eric C. Johnson, respectively, and that all such sums were reasonable and necessary expenses for the care of the decedent. Following the death of Jack T. Fugitt, his daughter Victoria P. Myers was duly appointed and qualified as executrix of his estate. Thereafter, Paterson P. Fugitt, the hospital, and Dr. Johnson filed claims against the estate for payment of the amount each claimed to be owing for expenses paid or services rendered to the decedent. Victoria P. Myers, as executrix, rejected each of the three claims which resulted in the consolidated lawsuit which is the subject of this appeal. The trial court entered judgment against Mrs. Myers, as executrix of the estate of Jack T. Fugitt but not individually, in favor of the three claimants for the amounts indicated. Victoria P. Myers appeals.

The gist of the appellant's argument is first, that the trial court made no finding of fact that the deceased ever requested the various services which were rendered so that there is no contract, express or implied, between the deceased and the respondents making the estate of the deceased liable for the expenses incurred. On the contrary, appellant contends that the trial court erred in failing to enter appellant's proposed finding of fact to the effect that Paterson

P. Fugitt agreed to pay for all services rendered to Jack T. Fugitt while a patient at the hospital, reduced only by the amount covered by insurance. Second, appellant suggests that the hospitalization of the decedent was the result of officious interference by Paterson P. Fugitt contrary to her wishes as next of kin who at all times sought to have her father returned to her care in her own home in Seattle or at a nearby nursing home, and therefore respondent Paterson P. Fugitt is not entitled to recovery.

■ As to the first argument, the general rule is that a patient is liable, under either an express or implied contract, for the medical services rendered to him, and after the patient's death the attending physician's claim for such services is a debt due from the decedent's estate. *In re Estate of Shoptaw,* 54 Wn.2d 602, 343 P.2d 740 (1959). In connection with a medical expense as a debt due from the decedent's estate, however, appellant overlooks the effect of RCW 11.76.110 which provides in part:

> After payment of costs of administration the debts of the estate shall be paid in the following order:
> (1) Funeral expenses in such amount as the court shall order.
> (2) *Expenses of the last sickness,* in such amount as the court shall order.

(Italics ours.) Respondents direct us to one of the few Washington cases which interpret this statute in the present context, *Smith v. Eichner,* 124 Wash. 575, 215 P. 27 (1923), in which our state Supreme Court compared the expenses of last sickness to funeral expenses and held that they should be treated in a similar fashion. There, the plaintiff husband sought reimbursement from his wife's estate for expenses he paid in connection with her last sickness. In deciding that the husband was entitled to such relief, the court relied upon the earlier case of *Cunningham v. Lakin,* 50 Wash. 394, 97 P. 447 (1908), which held that although the expenses of last sickness differ from administrative and funeral expenses in that such services are rendered during the life of the decedent, there is nevertheless

a similarity because all such expenses are chargeable against the estate, "not by reason of a contract, express or implied, but by virtue of the statute." *Smith*, 124 Wash. at 576. The court then quoted with approval from *Butterworth v. Bredemeyer*, 74 Wash. 524, 528, 133 P. 1061 (1913), a case involving funeral expenses, the following language relative to the statute there in question:

> "Under this statute, the liability of the estate must be regarded as primary, and the rule in such a case, as in other cases of primary and secondary liability, is that the creditor must exhaust his remedy against the primary fund before he can resort to the secondary fund. It is not denied, of course, that an express promise to pay the expenses of a funeral will create a primary liability against the person so promising, but it is meant that nothing less than an express promise will create such a liability. In other words, a mere direction to furnish such service and supplies is presumed to be made on the faith of the credit of the estate, and nothing short of an order and an express promise to pay for the furnishings by the person giving the order will create a primary liability on his part."

*Smith*, 124 Wash. at 576.

Thus, in *Smith*, it was held that a primary obligation of an estate to pay the expenses of the decedent's last sickness arises by statute and not by any express or implied contract entered into by the decedent, and the estate cannot avoid such primary liability in the absence of an express promise by a third party to assume the obligation. We believe that this remains the applicable rule of law. RCW 11.76.110; *see In re Estate of Offield*, 7 Wn. App. 897, 503 P.2d 767 (1972).

In the case at bar there is substantial evidence in the record, which the trial court properly could believe, to establish that Paterson P. Fugitt's payments toward his brother's medical expenses were in the nature of a direction to those providing the medical services to care for his brother, the decedent Jack T. Fugitt, and that Paterson P. Fugitt at all times expected to be reimbursed by Jack T. Fugitt's own funds. Therefore, we conclude that Paterson

P. Fugitt's actions did not amount to an express promise to assume the primary obligation of Jack T. Fugitt's estate for the expenses of the decedent's last sickness, and thus the trial court correctly held that the respondents may look to the appellant as executrix of the estate for reimbursement or payment in connection with such expenses. Although it would have been preferable if the trial court had made a finding to the effect that Paterson P. Fugitt did not assume primary liability for his brother's medical expenses, it is not error for a trial court to fail to make such a negative finding. *King v. King*, 4 Wn. App. 354, 481 P.2d 457 (1971). Further, such a finding is implicit in the trial court's decision. *See Tradewell Stores, Inc. v. T. B. & M., Inc.*, 7 Wn. App. 424, 500 P.2d 1290 (1972).

In this context, we note that the narrow question before this court is whether Paterson P. Fugitt and Victoria P. Myers, brother and daughter of the decedent, entered into a contract which obligated Paterson P. Fugitt to pay for certain of the decedent's medical expenses and which superseded the primary statutory obligation imposed upon the estate to pay such expenses. RCW 11.76.110. The trial court assumed that any such contract would obligate Paterson P. Fugitt to pay the debt of another and therefore would be void under the statute of frauds unless in writing. RCW 19.36.010. In this connection, the following colloquy occurred between the trial judge and appellant's counsel:

THE COURT: It [the promise to pay for the medical expenses incurred] would not be binding on him [Paterson P. Fugitt], anyway, unless it's in writing.

MR. BURTON [attorney for Mrs. Myers]: I understand.

THE COURT: It's not binding on him. If he promised to pay it and did it wouldn't be binding on him. It wouldn't be binding unless it was in writing. Why go into all these details? Was it is writing or was it not in writing?

MR. BURTON: The estate isn't suing him.

THE COURT: No, but it would be a defense to his claim if he says he would pay it or obligated himself to pay it. He was obligated to pay the items of his claims. Then he had a claim against the estate.

MR. BURTON: Right.

THE COURT: But, there is no showing here so far that he has signed in writing that he would pay these obligations.

It is apparent that there was a dispute regarding the necessity of the hospitalization in question which could have been resolved during the lifetime of the deceased. Mrs. Myers waived her right thus to resolve the dispute in reliance upon Paterson P. Fugitt's promise to pay. Whether the contract, if proved, could be enforced may have been a proper question below, but the record contains neither an offer of proof nor a specific proposed finding of fact on the issue. At the same time, it appears from the record that the trial court in its zeal to move the trial along precluded the introduction of evidence on the point; however, even if this were established, we cannot remand for a trial on the issue in the absence of at least a showing of a rejected offer of proof on the existence of the alleged contract. We find no error.

With reference to appellant's argument to the effect that the respondent Paterson P. Fugitt should be barred from reimbursement on the ground that he acted officiously or voluntarily to deprive the decedent and his daughter, the appellant, of mutual comfort and companionship during the decedent's last sickness, a review of the record discloses substantial evidence to the contrary. As the trial judge stated in his oral opinion with reference to the decedent,

the Court is satisfied that the man, the last five months of his illness or his lifetime with a brain cancer received good care. He was entitled to it. He was conscious during all the time, knew what he was getting practically up to the very last week, and apparently wanted it, and if there is money in the estate to pay for it, the estate is obligated to pay for it.

Judgment affirmed.

FARRIS and JAMES, JJ., concur.

Petition for rehearing denied October 30, 1973.

Review denied by Supreme Court December 14, 1973.