[No. 2573-42794-1. Division One. January 27, 1975.]

J. C. SCHMITT, *Respondent,* v. JOHN J. MATTHEWS *et al.,* *Appellants.*

*Derrill T. Bastian,* for appellants.

*Montgomery, Purdue, Blankinship & Austin, Lynn O. Hurst,* and *Peter D. Jarvis,* for respondent.

SWANSON, C.J.—The underlying question presented by this appeal is whether, as a matter of law, the purchase and sale of conditional sale contracts necessarily involves a loan of money such that the transaction is subject to the State usury laws, RCW 19.52.

The undisputed findings of fact by the trial court indicate that appellants John J. Matthews and wife, doing business as Seal-O-Matic Co. ("Matthews"), were engaged in the sale of kitchenware primarily through the use of conditional sale contracts. During the course of his years of operation in this business, Matthews has sold such conditional sale contracts to various third parties at less than the balance remaining due. Commencing in September 1968 and continuing through October 1970, Matthews sold approximately 250 conditional sale contracts to the respondent J. C. Schmitt, doing business as J. C. Investment Co. ("J. C. Investment"). Under the terms of such sales, payments from Matthews' customers were transferred to J. C. Investment and in the event of a default by any customer, Matthews was liable to J. C. Investment for the full value of the particular contract pursuant to an "assignment with recourse" agreement.[1] The record reflects that J. C. Investment brought suit

---

[1]The record indicates that the "assignment with recourse" agreement provided in part: "FOR VALUE RECEIVED, Seller [Matthews] does hereby sell, assign and transfer all right, title and interest in and to the within Retail Installment Contract and the goods described therein to [J. C. Investment] (hereinafter referred to as Assignee), its successors and assigns, and authorizes Assignee to do every act and thing necessary to recover upon and fully discharge the same, including the right to endorse any check or draft payable to Seller regarding this contract. In consideration of purchase of said contract by Assignee, Seller unconditionally guarantees payment of all sums to be paid thereon and covenants that if Buyer defaults according to the terms and provisions thereof Seller

against Matthews for amounts allegedly owing under the terms of certain of the conditional sale contracts. In response to J. C. Investment's complaint, Matthews raised the affirmative defense that the true relationship of Matthews and J. C. Investment was that of borrower-lender and that conditional sale contracts tendered by Matthews to J. C. Investment were not the subjects of sale transactions, but merely served to measure the amount of money to be loaned by J. C. Investment to Matthews. Further, Matthews alleged that the terms of these "loans" constituted a violation of the usury law, RCW 19.52, and demanded payment of the penalties authorized by such laws. The trial court ruled in favor of J. C. Investment, finding that the transactions in question constituted the sale of conditional sale contracts and not the loan of money, and judgment was entered in favor of J. C. Investment on April 6, 1973. Matthews appeals.

At the outset of this appeal, we are confronted by a jurisdictional challenge. Respondent J. C. Investment contends that Matthews' appeal should be dismissed because of appellant Matthews' failure timely to notify respondent that an appeal had been taken, as required by CAROA 33(8). Respondent urges that such notice is a jurisdictional requirement, and directs our attention to *Myers v. Harris,* 82 Wn.2d 152, 509 P.2d 656 (1973). We disagree. In *Myers,* our State Supreme Court held that the timely payment of the required filing fee, in addition to the timely filing of a proper written notice of appeal, is a jurisdictional prerequisite in the appeal of all civil cases. The court emphasized that CAROA 33(1) and ROA I-33(1), which set forth the filing fee requirement, make specific reference to "jurisdiction." Here, the appellant met the requirements of CAROA 33(1), and we are concerned with CAROA 33(8) which, although mandatory

shall at the time of such default be obligated to pay to Assignee all sums due from Buyer thereon. Seller waives notice of such default by Buyer and consents to any and all reasonable adjustments and extensions entered into between Assignee and Buyer, which adjustments and extensions may be made either before or after maturity of the obligations of Buyer arising from said contract."

in nature, makes no jurisdictional reference and therefore is enforceable pursuant to the terms of CAROA 32.[2] In this connection J. C. Investment has made no showing of prejudice or apparent injury suffered by it because of appellant's failure to give timely notice to it that an appeal had been taken. Indeed, the record indicates that J. C. Investment received such notice within 4 days of the expiration of the 30 days permitted. CAROA 33(1). Under such circumstances and in view of our conclusion that the notice requirement of CAROA 33(8) is not a jurisdictional prerequisite, we impose no sanction against appellant Matthews and proceed to the merits of his appeal.

On appeal, appellant concedes that the dispositive issue is whether the transactions he entered into with J. C. Investment constituted usurious loans, or the sale of conditional sale contracts exempt from the provisions of the usury statutes. In this context, he makes seven assignments of error to the judgment and certain findings of fact and conclusions of law entered by the trial court, including the following crucial findings and conclusions:

Both the plaintiff [J. C. Investment] and the defendant [Matthews] intended these transactions to be bona fide sales of conditional sales contracts and not a subterfuge for loans.

Finding of fact No. 4, in part.

In each case when the defendant sold a conditional sales contract to the plaintiff, he did so by executing an assignment with recourse agreement either on the back of or attached to the conditional sales contract. Examples of these assignment agreements are found on the contracts in Exhibit 1.

Finding of fact No. 5.

[2]CAROA 32 provides in part:

"Failure of the appellant to take any further steps to secure the review of the order, judgment, or decree appealed from does not affect the validity of the appeal, but is ground only for such remedies as are specified in these rules or, when no remedy is specified, for such action as the court of appeals deems appropriate, which may include dismissal of the appeal."

The relationship between the plaintiff and the defendant was that of purchaser and seller of the conditional sales contracts.

Conclusion of law A.

The transactions in which the plaintiff purchased and the defendant sold conditional sales contracts did not involve a loan or forbearance of money or something circulating as such and therefore not subject to the usury statutes.

Conclusion of law B.

 Appellant makes little effort to challenge the findings of the trial court which are supported by substantial evidence. At the same time, appellant recognizes the well-settled doctrine which defines usury in this state, pointing out that our State Supreme Court, quoting from *Hafer v. Spaeth*, 22 Wn.2d 378, 382, 156 P.2d 408 (1945), in *National Bank v. Thomsen*, 80 Wn.2d 406, 410, 495 P.2d 332 (1972), identified the essential elements of usury as follows:

(1) a loan or forbearance, express or implied; (2) money or its equivalent constituting the subject matter of the loan or forbearance; (3) an understanding between the parties that the principal shall be repayable absolutely; (4) the exaction of something in excess of what is allowed by law for the use of the money loaned or for the benefit of the forbearance; and, in some jurisdictions, (5) an intent to exact more than the legal maximum for the loan or forbearance.

To determine whether all these essential elements are present, the courts will look through the form of the transaction and consider its substance. If all the requisites are found to be present, the transaction will be condemned as usurious, but, if any one or more of them are lacking, the parties cannot be charged with a usurious practice.

The striking attribute of the present record is that not only are the findings challenged by the appellant supported by substantial evidence, but also there is no finding by the trial court that any of the essential elements of usury, as set forth in the quoted language, existed with relation to any of the

transactions between the appellant and respondent. Appellant has assigned no error to the failure of the trial court to make any such finding; here, where the burden of proving usury is upon the appellant, the trial court must find that each of the elements of usury exists, and the absence of such findings where the evidence is controverted amounts to a finding that such elements do not exist. *Baillargeon v. Press*, 11 Wn. App. 59, 521 P.2d 746 (1974); *McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970). In this regard, there is no requirement that the trial court expressly make such a negative finding, which, in any event is implicit in its decision. *Fugitt v. Myers*, 9 Wn. App. 523, 513 P.2d 297 (1973). Appellant emphasizes the superiority of substance over form, which is particularly appropriate in usury cases, by directing our attention to the following language in *Busk v. Hoard*, 65 Wn.2d 126, 127, 396 P.2d 171 (1964):

> Usury has long been recognized as a social and economic evil affecting not only the parties to the transaction but society in general. Being widely regarded thus and condemned by law as well, it is frequently hidden by legalistic devices and cloaked in dissimulation. When, therefore, usury is claimed as a defense, the courts must, after looking beneath the surface of a transaction, examine it in all its ramifications to see if the defense is valid.

*See also Baske v. Russell*, 67 Wn.2d 268, 271, 407 P.2d 434 (1965). Appellant has made no showing, nor does the record indicate, that the required examination was not made by the trial court which otherwise is presumed to have applied the law. Thus, for the reasons stated, the court's findings of fact clearly support its conclusions of law to the effect that no usurious loan was involved in the sale of the conditional sale contracts here in question. *See Flannery v. Bishop*, 81 Wn.2d 696, 504 P.2d 778 (1972).

Appellant, however, contends that the trial court's previously quoted findings of fact Nos. 4 and 5 properly must be considered to be erroneous conclusions of law. In effect, appellant contends that, as a matter of law, any sale of a conditional sale contract must be viewed as a transaction

involving a loan of money and, as such, must be subject to the State usury statutes, RCW 19.52. Both respondent and amicus curiae[3] argue that at least since *Martin v. McAvoy,* 130 Wash. 641, 228 P. 694 (1924), was decided, the rule in Washington has been that the sale or assignment of a conditional sale contract is a transaction which is exempt from the prohibition of the usury laws. Appellant suggests that *Martin v. McAvoy, supra,* is "virtually identical" to *Hafer v. Spaeth, supra,* and argues that after the relatively recent decision in *National Bank v. Thomsen, supra, Hafer* and, therefore, *Martin,* are no longer the law. We disagree.

First, it should be noted at the outset that the plurality in *National Bank v. Thomsen, supra* at 411, expressly refused to "either affirm or overrule *Hafer v. Spaeth, supra."* Second, *Hafer v. Spaeth, supra,* is not comparable either to *Martin v. McAvoy, supra,* or to the case at bench. Similarly, *National Bank v. Thomsen, supra,* including its discussion of *Hafer v. Spaeth, supra,* is not applicable to the instant controversy.

In *Hafer,* the defendant Spaeth was the assignee of the interest of the purchaser of a piano bought pursuant to a conditional sale contract. There was an unpaid balance due on the contract which Spaeth refused to pay. Hafer, who had been assigned the seller's interest in the contract, brought suit for the balance against Spaeth who raised the defense that the contract violated the usury statute then in force. Our State Supreme Court held that the "transaction contemplated a sale and purchase of personal property upon certain terms and for a specific amount, payable in installments at definite times", *Hafer v. Spaeth, supra* at 385, and therefore was not a loan within the meaning of the usury statute.

In *National Bank v. Thomsen, supra,* the defendant Thomsen bought a new automobile pursuant to a conditional sale contract which was assigned by the automobile dealer to the National Bank of Commerce in accordance with an agree-

---

[3]The law firm of Davis, Wright, Todd, Riese & Jones, as amicus curiae, filed a brief arguing the purchase and sale of a conditional sale contract is exempt from usury statutes under Washington law.

ment between the dealer and the bank. When Thomsen ceased making payments to the bank, the bank brought suit for the balance and Thomsen defended on the basis that the contract was usurious. The State Supreme Court held that there was an implied agency between the automobile dealer and the bank such that the contract never amounted to a conditional sale on credit—inasmuch as the automobile dealer was paid in full by the bank—but rather was a usurious loan by the bank to Thomsen. Although the court distinguished *Hafer* on the basis that it involved a true conditional sale not financed by the plaintiff, as distinguished from a loan of money through the plaintiff's agent, it observed, at page 411:

> While it is perhaps still true that the majority of courts adhere to the view that a conditional sale is not a "loan or forbearance," there is now respectable authority to the contrary. *See* Annot., 14 A.L.R.3d 1065, 1069 (1967). Also, the rationale which was commonly used to distinguish sales on credit from loans and which was set forth in *Hafer v. Spaeth, supra,* has been subjected to some rather severe criticism.

(Citations omitted.) In this connection, it is notable that it has been recognized in this state that an extension of time for payment of a balance due under a true conditional sale contract may constitute a loan or forbearance subject to the usury laws. *Weitzman v. Bergstrom,* 75 Wn.2d 693, 453 P.2d 860 (1969).

It is therefore apparent that both *Hafer* and *National Bank,* as distinguished from *Martin v. McAvoy, supra,* and the instant case, involved the plea of usury raised by the consumer *purchaser of personal property pursuant to a conditional sale contract.* In *Hafer,* the court held that the conditional sale contract was not in fact a loan; in *National Bank,* the court held to the contrary. In this case, however, and in *Martin,* the issue presented is whether the plea of usury is available to the *seller of a conditional sale contract in and of itself.* We hold that it is not.

In *Martin*, McAvoy purchased the vendor's interest in conditional sale contracts between the vendor automobile company and consumer purchasers of automobiles. While the automobile company was going through bankruptcy proceedings, it brought suit against McAvoy alleging that the terms under which McAvoy was assigned the conditional sale contracts amounted to usury. Our State Supreme Court held that no usurious loan was involved and stated, at pages 643-44:

> On these conditions we are unable to see any usury as between the company and McAvoy, whatever there may have been as to the purchasers of cars.
>
> . . .
>
> . . . Consequently the assignments of such contracts may be for any price which is satisfactory to the parties and not constitute usury.

(Citations omitted.) Similarly, in the case at bar, the respondent J. C. Investment purchased Matthews' vendor's interest in conditional sale contracts between Matthews and the consumer purchasers of kitchenware. When Matthews failed to meet his obligations under the "assignment with recourse" agreement, J. C. Investment brought suit and Matthews raised the affirmative defense of usury. We are unable to see any usury as between Matthews and J. C. Investment, whatever there may have been as to the purchasers of kitchenware. Thus, J. C. Investment had the right to purchase conditional sale contracts at whatever price was agreed to by Matthews, just as would be the case in any purchase and sale for cash. Accordingly, we need not reach the problem alluded to in *National Bank v. Thomsen, supra*, in the course of the court's discussion of *Hafer v. Spaeth, supra*, as to whether the "sky is the limit" with reference to the price which must be paid by consumers purchasing goods by means of a conditional sale contract, as distinguished from the "discount" which must be agreed to by the seller of the conditional sale contract itself. As the court stated in *Baske v. Russell, supra* at 270-71:

A sale of commercial paper or other chose in action cannot be construed as usurious, regardless of the profit made, unless it constitutes in reality a device for the exaction of illegal interest; and in order to establish the latter, it is necessary to produce sufficient competent evidence of the existence of all of the elements of usury.

(Citation omitted.) In short, as the court in *Palmer v. Stevens-Norton, Inc.,* 75 Wn.2d 155, 158, 449 P.2d 689 (1969), stated when confronted with a somewhat different factual situation than is presented here:

Whether a note is usurious depends entirely on what a borrower is required to pay for the use of the borrowed money and does not depend on what return a bona fide purchaser for value seeks to realize on his investment.

In this case, the trial court properly found that Matthews and J. C. Investment were engaged in the purchase and sale of conditional sale contracts. Under such circumstances, the amount of return to be realized by J. C. Investment upon its bona fide purchases does not, as a matter of law, convert the transactions into usurious loans. We conclude the trial court did not err in making its conclusions of law.

Appellant Matthews raises two additional points in the course of his argument that the transactions here were loans rather than sales. First, he suggests that the "assignment with recourse" agreement applicable to each of the transactions establishes that "absolutely repayable" loans were involved, rather than sales. Similarly, he suggests that the fact that he involved himself in the servicing of delinquent accounts, which were subjects of conditional sale contracts transferred to J. C. Investment, indicates a loan secured by such contracts, rather than a sale of such contracts. We need only observe that, as we indicated previously, the trial court properly and expressly found to the contrary and that, moreover, the agreement of the parties as to an assignment with recourse, or as to the servicing of delinquent accounts, may be construed equally readily to be either conditions of a sale, or conditions of a loan. *See* RCW

62A.9-502(2). Substantial evidence supports the trial court's finding that a sale was involved here.

Second, appellant directs our attention to *State ex rel. O'Connell v. PUD 1*, 79 Wn.2d 237, 484 P.2d 393 (1971), as authority for the proposition that the purchase of a conditional sale contract amounts to a loan of money, and appellant also points out that *O'Connell* was cited to that effect in *National Bank v. Thomsen, supra* at 414. Nevertheless, it is our view that the *O'Connell* case is inapposite here. There, our State Supreme Court held that a county's purchase of the vendor's interest in a conditional sale contract violated the state constitution's prohibition against the loan of money by a municipal corporation. Const. art. 8, § 7.[4] We are of the opinion that the overriding public interest, reflected by the history of the constitutional provision in question which basically involves the protection of the taxpayers' money, distinguishes *O'Connell* from the present case where we are concerned only with the question of whether a purchase of the vendor's interest in a conditional sale contract is a loan of money within the meaning of the State's usury statutes. *See Baske v. Russell, supra; Martin v. McAvoy, supra.*

 Respondent has moved for an award of attorney fees incurred in the defense of this appeal, and this motion is accompanied by supporting argument, together with an affidavit and time sheets detailing the necessity of requested fees in the amount of $2,805.60. Respondent points out that the trial court awarded respondent what the court determined to be reasonable attorney fees incurred at trial in the amount of $750 and that the court made this award on the basis of a provision of the conditional sale contracts purchased by the respondent and guaranteed by the appellant.

---

[4]Const. art. 8, § 7 provides:

"No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation."

Respondent urges that such a provision encompasses fees necessary for appeal as well as for trial. We agree. *Corinthian Corp. v. White & Bollard, Inc.*, 74 Wn.2d 50, 442 P.2d 950 (1968); *Commercial Credit Corp. v. Wollgast*, 11 Wn. App. 117, 521 P.2d 1191 (1974); *Ranta v. German*, 1 Wn. App. 104, 459 P.2d 961 (1969). Appellant assigns error to the trial court's award of attorney fees at trial, but makes no argument in support of his claim of error and so it will not be considered. Similarly, appellant offers no response to the respondent's motion for attorney fees on appeal. Under such circumstances, we have determined that respondent is entitled to a reasonable attorney fee for this appeal. Therefore, a fee in the amount of $750 will be allowed.

The judgment of the trial court is affirmed.

WILLIAMS and CALLOW, JJ., concur.