KEEFE *v.* BUSH & LANE PIANO CO.

SAME *v.* FARRAND PIANO CO.

1. USURY—CONTRACTS PROVIDING FOR GREATER PRICE FOR PIANOS SOLD ON CREDIT NOT USURIOUS.

> That under contracts between consignors and consignee the latter was required to pay one-half of one per cent. a month on unpaid balances due for pianos consigned to him and sold by him on contract, as a carrying charge, in addition to six per cent., beginning at the end of the credit period, did not render the contracts usurious, since it is legal to accept a less price for cash than when sold on credit, and to accept less when sold on short-term credit than when a longer period of credit is granted.

2. FACTORS—CONSIGNEE'S DEATH DID NOT TERMINATE INTEREST AND CARRYING CHARGE.

> Where consignee sold on contract pianos consigned to him, guaranteeing the payment thereof, and agreeing to pay a carrying charge in addition to six per cent. interest, beginning at the end of the credit period, the consignee's death did not affect the amount due consignors or terminate the interest and carrying charge, but the administrator of consignee's estate could have terminated them by paying the balance due the consignors.

Error to Ottawa; Cross (Orien S.), J. Submitted April 4, 1929. (Docket Nos. 52, 53, Calendar Nos. 34,015, 34,016.) Decided June 3, 1929.

Separate actions of assumpsit by G. J. Keefe, administrator of the estate of W. D. Keefe, deceased, against the Bush & Lane Piano Company and the Farrand Piano Company on agency contracts. From judgments for defendants, plaintiff brings error. The cases were tried jointly. Affirmed.

*Leo C. Lillie,* for plaintiff.

*Charles H. McBride,* for defendants.

NORTH, C. J.  Two suits brought by plaintiff against the defendants have been consolidated.  In March, 1919, plaintiff's decedent, W. D. Keefe, consummated contracts with the respective defendants whereby he undertook the sale of pianos manufactured by them and received by him on consignment. The decedent will be referred to herein as the plaintiff.  By the terms of the contracts plaintiff was to settle for the pianos consigned to him within four months from the date of shipment.  The prices of the pianos for which the plaintiff was to account were fixed by a list agreed upon between him and the respective defendants; but the prices at which the pianos were sold to the ultimate purchasers were fixed by Mr. Keefe.  Some of the pianos were sold for cash and some were disposed of on leases or title-retaining contracts.  Under the Bush & Lane contract unpaid portions of the purchase price bore interest at 6 per cent. per annum beginning four months after the date of shipment, and the Farrand Company contract provided for a like interest charge beginning 60 days after shipment.  Beginning four months after shipment, plaintiff was also charged with a "carrying charge" of one-half of one per cent. per month on such unpaid balance until the portion of the contract price which belonged to the manufacturers was paid in full.  Thereupon any unpaid balance on such contracts became the property of the plaintiff.  This together with certain specified commissions constituted Mr. Keefe's profit or compensation.  After this contract had been in effect between the parties a little over two years, the plaintiff died (May 15, 1921) and at that time

there were upwards of 40 of these sales contracts outstanding. Under the provisions of plaintiff's contracts with the defendants, the leases or sales agreements entered into with the ultimate purchasers were taken in the name of "Manufacturer's Agency of Chicago, Illinois;" but each contract was forthwith assigned by Mr. Keefe to the company whose instrument was sold. All subsequent payments were made to the assignee. On June 30, 1927, the administrator of decedent's estate instituted these suits claiming a substantial balance was due to decedent from each of the defendants. This claim is founded upon two contentions. (1) That the "carrying charges" of one-half of one per cent. provided for in the contracts between W. D. Keefe and the defendants are usurious, and in consequence thereof the defendants are not entitled to make any interest charge against Mr. Keefe; and (2) that in any event the relationship between these parties was terminated immediately after Mr. Keefe's death by the act of the defendants in sending their representative who took over the stock on hand, and that thereafter the charges now insisted upon by the defendants could not lawfully be deducted from the amounts that otherwise would have accrued to the estate of the deceased in the meantime. The case was heard before the circuit judge without a jury, a finding of facts and law was made and filed, and a judgment of no cause for action rendered. Plaintiff reviews by writ of error.

1. Are these contracts usurious because they provided that each unsettled account should not only bear interest at 6 per cent. per annum, but that plaintiff should also be chargeable with a "carrying charge" of one-half of one per cent. per month computed on the amount unpaid on the account at the

end of the credit period? The contracts between these parties provide:

"All the pianos that are now or shall hereafter be furnished me (W. D. Keefe) by you are to be held upon consignment and sold on such terms as you may direct.

"All moneys, notes or other property, received on the sale of any piano shall belong to you as hereinafter provided. Customer's notes or leases shall be made on blanks furnished by me and secured by lien on the instrument sold, assigned payable to your order, payment as stipulated in said notes and leases to be guaranteed by me and subject to your approval.  *  *  *

"I agree to settle with you for all pianos consigned me within four months from date of shipment and to pay you interest at the rate of 6 per cent. per annum after 60 days (after four months in Bush & Lane contract) from date of shipment, but in event that you should agree to extend the consignment period on any instrument consigned me beyond the four months an additional premium of one-half of one per cent. per month on the consignment price of such piano is to be charged for the time so extended, it being expressly understood that the charge of said interest and said premium and the payment thereof is in no sense to be construed as indicating a sale of said instrument to me."

Each time Mr. Keefe received a piano from one of the defendants, he sent to the shipper a receipt in which the instrument was described and wherein it was stated:

"Received the above described piano in good order and condition in all respects, and I agree to sell the same for the account of Farrand Piano Co., (or Bush & Lane Piano Co.) subject to my agreement with them dated 3-20-19."

In the sale of goods it is a common and legal practice to accept a lesser price for cash than when sold on credit, and to accept less when sold on short-term credit than when a longer period of credit is granted. The transactions between the plaintiff and these defendants were not loans of money, but rather consignments of defendants' goods incident to which plaintiff acted as defendants' agent in the capacity of a salesman; and the defendants assumed the burden of the bookkeeping and making the collections on the sales contracts.

"On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense; and it has been held that it is not material that the agreement for the purchase price in the future, instead of specifying the whole sum then to be paid, names a particular sum as principal, and declares that it shall draw interest at a rate which, were the transaction a borrowing and lending, would clearly be usurious." 27 R. C. L. pp. 214, 215.

"Usury can only attach to a loan of money, or to the forbearance of a debt, and that on a contract to secure the price or value of work and labor done or to be done, or of property sold the contracting parties may agree upon one price if cash be paid, and upon as large an addition to the cash price as may suit themselves if credit be given; and it is wholly immaterial whether the enhanced price be ascertained by the simple addition of a lumping sum to the cash price, or by a percentage thereon. In neither case is the transaction usurious. It is

neither a loan nor the forbearance of a debt, but simply the contract price of work and labor done and property sold; and the difference between cash and credit in such cases, whether 6, 10, or 20 per cent., must be left exclusively to the contract of the parties, and no amount of difference fairly agreed upon can be considered illegal." *Davidson* v. *Davis,* 59 Fla. 476 (52 South. 139, 28 L. R. A. [N. S.] 102); *State Mutual Fire Ins. Co.* v. *Randall,* 232 Mich. 210 (41 A. L. R. 973).

We are of the opinion that the contracts between the plaintiff and the defendants are not usurious. Instead they were contracts for the services of Mr. Keefe as a salesman which provided he should receive a larger measure of compensation for cash sales than for sales on credit, and also that his compensation should be larger for sales made on short-time credit than for those on longer terms of credit.

2. Soon after plaintiff's death, and on May 20, 1921, the defendants submitted a statement showing an "apparent surplus" in favor of Mr. Keefe of $934.88 on the Bush & Lane accounts, and $5,344.54 on the Farrand Piano Company accounts, but counter charges of $1,071.27 were made. It is now claimed that Mr. Keefe's death terminated the relation of these parties and that thereafter neither interest nor the "carrying charge" should be allowed to continue to accrue and minimize or absorb plaintiff's "apparent surplus." But it should be remembered that the so-called "apparent surplus" was nothing more than a possible paper profit contingent upon the prompt payment of all outstanding contracts. For the purpose of computing and adjusting the amounts due on the respective outstanding sales contracts, the contractual relations between the respective defendants and Mr. Keefe

were not affected by his death. The delay in bringing this suit from the time of Mr. Keefe's death (May 15, 1921) until June 30, 1927, has resulted in an accumulation of interest and "carrying charges" which has wiped out the "apparent surplus"; but this seems to have been an inevitable result under the terms of these contracts, and could have been avoided only by the administrator of Mr. Keefe's estate exercising his right to pay the portion of the respective contracts which belonged to the defendants and taking over the unpaid portion. He had the right to make these payments because they were guaranteed by Mr. Keefe. This was not done, but the defendants are not to be blamed for or charged with the consequences to Mr. Keefe's estate. As stated above, the latter's death did not affect the rights of the respective parties in the outstanding contracts either as to the interest charge or "carrying charge."

No other questions are raised by the record. The trial judge arrived at the right determination and the judgment of no cause for action is affirmed. The appellees will have costs of this court.

FEAD, FELLOWS, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.