**In the Matter of SKYLAND, INC., Debtor.**

**Bankruptcy No. HG 82 00926.**

United States Bankruptcy Court, W.D. Michigan.

July 27, 1983.

Geoffrey L. Gillis, Grand Rapids, Mich., for debtor.

Stephen M. Tuuk, Grand Rapids, Mich., for Union Oil Co.

Timothy Curtin, Grand Rapids, Mich., for trustee.

Gordon Forell, Grand Rapids, Mich., trustee.

## OPINION

### USURY TIME PRICE DIFFERENTIAL

LAURENCE E. HOWARD, Bankruptcy Judge.

This matter is before the court on the debtor's objection to a claim filed by Union Oil Company. Union Oil has claimed $119,405.65 is due for various credit card purchases of oil and gasoline products. This amount includes $9,421.75 in finance charges for late payments. The debtor has objected to the finance charges as being usurious under Michigan Law. Pursuant to M.S.A. § 19.15(2) [M.C.L.A. § 438.32], the debtor contends Union Oil is not entitled to any interest on their claim. Union Oil counters that the interest charged is allowable under the corporate exception to the usury law, M.S.A. § 21.200(275) [M.C.L.A. § 450.1275], that state law has been preempted by the Federal Depository Institution Deregulation and Monetary Control Act of 1980, specifically 12 U.S.C. § 86a, or that this situation fits within the time price differential exception to the usury laws. The matter was tried and argued before this court, and briefs were submitted.

From the testimony, it is not disputed that a local representative of Union Oil talked with the debtor's president, Kenneth Keller, concerning the issuance of credit cards for the debtor's truck fleet. At this interview, the Union Oil representative filled out a credit application. A notation on the application indicates the debtor's president was advised of the payment terms and delinquency charges. The application form was not signed by Keller nor was there a space provided to do so. The Union Oil representative testified that he explained the finance charges to Keller. On March 31, 1980, Union Oil sent a letter to Keller thanking him for opening the account, and enclosing the credit cards. In addition, there was testimony that a card explaining all the financial charges was sent along with the credit cards. The Union Oil witness admitted they could not be sure the explanation was sent in this case, however it was their standard practice to do so. The parties agree that the debtor's employees purchased petroleum products from Union Oil, and copies of signed unpaid charge slips were admitted into evidence. The amount of the debt is no longer in dispute; neither is the total finance charges.

The general rule in Michigan is that the maximum permissible rate of interest that can be charged on a written agreement is 7% per annum. MSA § 19.15(1) [M.C.L.A. § 438.31]. However, this rule is subject to a plethora of exceptions. MSA § 21.200(275) [M.C.L.A. § 450.1275] provides that:

> A domestic or foreign corporation, whether or not formed at the request of a lender, may by agreement in writing, and not otherwise, agree to pay a rate of interest in excess of the legal rate and in such case the defense of usury is prohibited.

In *Taines v. Munson,* 19 Mich.App. 29, 41–42, 172 N.W.2d 217 (1969), the court considered MSA § 21.200(275) [M.C.L.A. § 450.1275] and the requirement that a corporate agreement to pay more than the legal rate must be "in writing and not otherwise." The court stated:

> This last-quoted language is the crucial part of the statute; it is forceful and unambiguous. The statute itself is in derogation of the common law and must be strictly construed.

The court went on to rule that an admission by a corporate officer that he orally agreed to an otherwise usurious rate was not sufficient.

Here, no corporate agreement to pay more than the legal rate of interest exists. The credit card application is not signed by any of the debtor's officers, and the application does not set forth the financing. The credit application, disclosure of financing terms, and signed receipts are not sufficient to meet this exception to the usury law.

Union Oil also argues that the Federal Depository Institution Deregulation and Monetary Control Act of 1980, specifically 12 U.S.C. § 86a preempts state usury law. That section provides, in part, that,

> § 86a. Interest on business and agricultural loans of $1,000 or more-Discount rate on ninety-day commercial paper
>
> (a) If the applicable rate prescribed in this section exceeds the rate a person would be permitted to charge in the absence of this section, *such person may in the case of a business or agricultural loan in the amount of $1,000 or more, notwithstanding any State constitution or statute which is hereby preempted* for the purposes of this section, take, receive, reserve, and charge on any such loan, *interest at a rate of not more than 5 per centum in excess of the discount rate,* including any surcharge thereon, *on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the person is located.* (emphasis added).

"Person" is defined as "a natural person or organization." 12 U.S.C. § 86a(b)(4). Union Oil contends this section allows it to charge an interest rate higher than allowed by state usury law on retail sales of petroleum products.

I do not believe the Federal Depository Institution Deregulation and Monetary Control Act is the proper basis for resolving the present issue. First, the section by its own terms only preempts state law where the rate provided for in the federal statute exceeds the rate that could otherwise be applied. As Judge Bobier correctly pointed out in *Matter of Charay Industries, Inc.,* 23 B.R. 988, 996 (Bkrtcy.E.D.Mich.1982) under Michigan law a corporation can be charged up to 25% per annum by written agreement before the obligation would be considered subject to the criminal usury statute. M.S.A. § 19.15(51) [M.C.L.A. § 438.41]. Since the formula provided for in § 86a never exceeded this amount, the federal statute works no preemption on state law.

■ Second, it is doubtful that small purchases of petroleum products can be aggre-

gated and termed a "business loan in the amount of $1000 or more." This provision providing for the preemption of state usury laws on business loans was added to the Deregulation Act to deal specifically with Arkansas usury limits. Arkansas had a constitutional usury ceiling of 10%, and to change that limit would require Arkansas to go through the rather lengthy procedure of amending their state constitution. As a way to provide Arkansas lenders with temporary relief until the constitution could be changed, this section was added. *See,* S.Rep. No. 368, 96th Cong., 2d Sess. 19–20, *reprinted in* 1980 U.S.Code Cong. & Ad. News 236, 255–256. Given this intent, and the terms of the section, one can only conclude that finance charges imposed by Union Oil on a revolving credit account were not affected by the new law.

Resolution of this matter depends on an analysis of the time price differential concept. Michigan law traditionally created a distinction between outright loans of money, and retail credit sales. Loans of money were strictly governed by usury laws. However, there was no law limiting the amount of time price differential which could be charged for paying for retail merchandise in installments. Thus, sellers were free to charge higher finance charges than lenders. *Grigg v. Robinson Furniture,* 78 Mich.App. 712, 724, 260 N.W.2d 898 (1977). In fact, state usury laws expressly exclude any time price differential which may be charged upon the sales of goods or services on credit. M.S.A. § 19.15(1) [M.C.L.A. § 438.31].

■ For a transaction to fit within the time price concept, it is sufficient that the buyer is given a choice between paying a cash price or paying an additional charge for buying on credit. *Manufacturers Bank v. Burlison,* 69 Mich.App. 570, 573, 245 N.W.2d 350 (1976). In *Keefe v. Bush & Lane Piano Co.,* 247 Mich. 82, 225 N.W. 585 (1929), the plaintiff sold pianos for the defendant on a consignment arrangement. The plaintiff had four months to settle for the pianos. After that time, unpaid portions of the purchase price bore interest at 6% per annum, plus a carrying charge of ½ of 1% per month. The court held these

transactions were not usurious because they were not loans of money. A credit sale could not be usurious however great the difference between the two prices. The court went on to cite authority that:

> ... it is not material that the agreement for the purchase price in the future, instead of specifying the whole sum then to be paid, names a particular sum as principal, and declares that it shall draw interest at a rate which, were the transaction a borrowing and lending, would clearly be usurious. 27 R.C.L. pp. 214, 215. p. 86.

In *Silver v. International Paper Co.,* 35 Mich.App. 469, 192 N.W.2d 535 (1971), the court faced the issue of whether an interest charge on a land contract purchase of real estate could constitute usury. The court found the situation constituted a time price differential, and was immune from usury laws. The court rejected arguments that the new usury statute controlled time price differential transactions. The court found it significant that rather than including time price differential into the usury statute, the retail installment sales act was adopted.

While time price differential transactions are not regulated by usury laws, there are other laws that control. The Michigan Retail Installment Sales Act was expressly intended to regulate the amount of finance charges, including time price differential, that can be charged on retail charge accounts. M.S.A. § 19.416(112) [M.C.L.A. § 445.862] sets forth the requirements of a retail charge agreement, and limits the time price differential to 1.7% of the unpaid balance per month. In addition, the section requires:

> (a) Each retail charge agreement shall be in writing and signed by the buyer or the authorized representative of the buyer.
>
> \* \* \* \* \* \*
>
> All retail charge agreements executed on or after the effective date of this act shall state the maximum amount and rate of the time price differential to be charged ...

■ However, the Retail Installment Sales Act was not intended to govern commercial transaction, and is not controlling here. M.S.A. § 19.416(102) [M.C.L.A. § 445.852] is the general definition section. Subparagraph (h) defines a retail charge agreement to mean an instrument prescribing the terms of retail installment transactions. A retail installment transaction is:

> (f) ... *any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement, which provides for a time price differential and under which the buyer agrees to pay the unpaid balance in 1 or more installments.* (emphasis added).

Goods are defined as:

> (a) ... all tangible chattels personal when purchased primarily for personal, family or household use and not for commercial or business use, ...

Similarly, services purchased for commercial or business use are excluded from coverage by this act. M.S.A. § 19.416(102)(b) [M.C.L.A. § 445.852(b)]. Since the transactions between Skyland and Union Oil were solely for business or commercial purposes, this act clearly does not apply, and compliance is unnecessary. The statute cannot extend further than the legislature intended. *See, Silver v. International Paper Co.,* 35 Mich.App. 469, 472, 192 N.W.2d 535 (1971); *Bandfield v. Bandfield,* 117 Mich. 80, 82, 75 N.W. 287 (1898).

■ The relationship between Skyland and Union Oil is not subject to usury laws, and is not restricted by the Retail Installment Sales Act. The requirements set forth in M.S.A. § 19.416(112) [M.C.L.A. § 445.862] that an agreement be a wholly integrated document, signed by the debtor, and setting forth all the terms and conditions are not applicable. The transactions between Skyland and Union Oil fall in an unregulated area of time price differential. This is not to say that the creditor can charge a time price differential without having an agreement with the debtor to do so, only that the agreement need not be written and signed by the buyer as required by the Retail Installment Sales Act.

Here, there is an agreement sufficient to permit imposition of time price differential

finance charges. Skyland's president applied for credit with Union Oil, and the application form indicates the credit policy was explained. When the credit cards were received, a pamphlet explaining the finance charges was enclosed. Charge slips were signed for each purchase. Further, the parties had a course of dealing, beginning in April, 1980. From this date until at least March 19, 1982, when the Chapter 11 petition was filed, purchases were made, bills were received, and some payments were tendered. Each bill set forth the amount of the finance charge, and what percentage was imposed on the unpaid balance. It seems inequitable to allow the purchaser to avoid an obligation he voluntarily entered into at this late date. Further, it is rather foolish to attempt to do so before any type of plan of reorganization is proposed.[1]

Accordingly, since the relationship here is an unregulated time price differential, I find that under all the circumstances the imposition of finances charges is proper. Therefore, Union Oil's claim is allowed as filed; debtor's objection is denied.

---

1. Subsequent to this matter being taken under advisement, the debtor voluntarily converted to Chapter 7.